Charles McGILL, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Walter M. **HINTON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 18828, 18829.

United States Court of Appeals
District of Columbia Circuit.

Argued April 29, 1965.

Decided June 29, 1965.

Mr. Warren E. Baker, Washington, D. C. (appointed by this court) for appellant in No. 18828.

Mr. Robert B. Frank, New York City (appointed by this court) for appellant in No. 18829.

Mr. Frank Q. Nebeker, Asst. U. S. Atty. with whom Messrs. David C. Acheson, U. S. Atty., Robert X. Perry and Martin R. Hoffmann, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit judge.

Following the return of an indictment against them on April 27, 1964, appellants, McGill and Hinton, together with a third defendant Barnhart, were arraigned in open court on May 1, 1964. They were charged on one count with robbery, and on another count with assault with intent to rob (based on separate complaints). The case came to trial on June 9, 1964. On June 15, 1964, the jury returned its verdict, finding McGill guilty of simple assault and assault with intent to commit robbery and Hinton guilty of robbery and of simple assault. Barnhart was acquitted on all counts.

McGill and Hinton appealed from their conviction proceeding *in forma pauperis*.

I Permissibility of Accepting Plea of Not Guilty Prior to Assignment of Counsel.

Appellants contend that they have been denied the constitutional right of an accused under the Sixth Amendment "to have the Assistance of Counsel for his defence." This claim is based on the fact that on May 1, 1964, prior to appointment or assignment of counsel, they were arraigned before the Chief Judge of the District Court, who accepted from each a plea of not guilty.

The docket sheet shows that on May 1, 1964, the Chief Judge referred Hinton's case and Barnhart's case for appointment of counsel. While no such indication appears on the record with respect to McGill's case, separate counsel were in fact appointed by the Court for each defendant on May 6, 1964.

The contention is that the Sixth Amendment requires the protection of counsel at "every step" in the proceedings. This is the language of Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Furthermore, Rule 44 of the Federal Rules of Criminal Procedure provides that when the accused is without counsel, the Court shall "assign counsel to represent him at every stage of the proceeding." The counsel appointed by this court argue to us that surely the arraignment is a "step" or "stage" in the criminal proceeding and that counsel is accordingly required. Cf. Evans v. Rives, 75 U.S.App.D.C. 242, 250, 126 F.2d 633, 641 (1942).

Counsel concede that they seek reconsideration of our ruling in Council v. Clemmer, 85 U.S.App.D.C. 74, 177 F.2d 22, cert. denied, 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949). See also United States ex rel. Cooper v. Reincke, 333 F.2d 608, 612 (2d Cir. 1964). The case involves a question of constitutional protection. The decision involved, rendered fifteen years ago, lies in a domain of jurisprudence which has been the subject of fresh consideration by the courts.

The scope of constitutional requirements has been redefined in the light of changing conditions, and the increasing awareness of the underlying needs of a democratic society devoted to the pursuit of equal justice for all under law. Accordingly, we have taken the point under advisement for fresh consideration. See Ricks v. United States, 118 U.S.App.D.C. 216, 218–219, note 2, 334 F.2d 964, 966–967 (1964).

Upon due reflection we see no basis for concluding that the Constitution requires the presence or assignment of counsel at a point when and where there is no reasonable possibility of prejudice to the rights or position of an accused, as in these cases.

The general language in Johnson v. Zerbst and Rule 44 must be read in the light of their fundamental purpose to provide the guiding hand of counsel at every step where an accused who is without counsel may be prejudiced. The taking of appellants' plea of not guilty on arraignment stands on an entirely different footing from the taking of a plea of guilty, which manifestly involves a possibility of such prejudice and hence cannot be accomplished prior to assignment of counsel. Von Moltke v. Gillies, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Evans v. Rives, supra.

Appellants' contention is developed in conceptual terms. The exaltation of abstraction above reality should not be condoned for the purpose of denying constitutional rights and should not be indulged for the purpose of creating constitutional rights. Counsel say that where the constitutional rights of an accused are involved it is not necessary to make a showing of actual prejudice. But before the court concludes that there is a constitutional right it must at least determine that the accused has been not necessarily prejudiced in fact, but at least exposed to a reasonable possibility of prejudice in fact.

Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) is invoked by appellants. That opinion cannot fairly be taken as a decision or indication that counsel is required in the Federal courts upon a plea of not guilty.[1] In that case the Supreme Court held that the Constitution required Alabama to provide counsel to accused at time of arraignment because of the necessity under Alabama law for asserting certain defenses at time of arraignment. Accordingly, the Supreme Court stated (p. 54, 82 S.Ct. p. 159) that in Alabama "[Arraignment] is a critical stage in a criminal proceeding. * * * Available defenses may be as irretrievably lost, if not then and there asserted, as they are when an accused represented by counsel waives a right for strategic purposes."

In these cases, however, the accused were not subject to the loss of defenses because of lack of counsel at the time of the not guilty pleas. Counsel suggested there is the possibility of prejudice inherent in the provisions of Rule 12 of the Federal Rules of Criminal Procedure concerning motions asserting defenses and objections based on defects in the institution of the prosecution or in the indictment or information. Rule 12(b) (3) provides: "The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter." The possibility of prejudice is asserted to derive from the possibility that the court may not permit such motion to be entered after the plea.

It has always been the lore, and we hereby expressly declare it to be

---

1. We have studied footnote 4 on p. 54 of 368 U.S., p. 158 of 82 S.Ct. It indicates that some states which hold "arraignment is the first step in a trial" consider the accused entitled to an attorney at arraignment. The footnote also observes that "[u]nder federal law an arraignment is a *sine qua non* to the trial itself." That does not make the arraignment any more than the indictment or information, a part of the trial. Such concepts cannot serve as substitutes for consideration of the real question of the possibility of prejudice, though they may tip the scales in case of doubt as to possibility of prejudice.

the law, of this jurisdiction that the defendant has an absolute right to consideration on the merits of objections encompassed by Rule 12, provided the motion be made within a reasonable time after the appointment of counsel, and his motion is in no way to be subject to prejudice because the plea of not guilty was taken prior to the appointment of counsel. If necessary to avoid possibility of prejudice, for some reason which we cannot anticipate, a defendant should be rearraigned.

In Blue v. United States, 119 U.S.App. D.C. 315, 342 F.2d 894, decided October 29, 1964, we held it requisite that accused be affirmatively advised that indigents are entitled to assignment of counsel without cost before United States commissioners in the District of Columbia may proceed with the preliminary examination. The court there discussed not only the Federal Rules of Criminal Procedure but also the Legal Aid Act, providing that the courts "will make every reasonable effort to provide assignment of counsel as early in the proceeding as practicable." 2 D.C.Code sec. 2202.[2]

▇ The District of Columbia is unique in the lead it has taken in quest of equal justice for all. As noted in Blue, this is due "in large part to an enlightened bar which has shouldered a truly professional responsibility of staggering scope." Our courts and bar have been in the forefront of this effort, and it is a front that is ever moving forward. Administration is under constant study in quest of improvement. The Blue case itself should substantially reduce the number of defendants without counsel, retained or assigned, at time of arraignment. The administration of the Legal Aid Act and of the Criminal Justice Act provide continuing opportunities to the bench and bar to improve the administration of criminal justice and to enhance the effective representation of the accused in all ways right and proper.

Without presuming in any way to speculate on the improvements that may lie ahead, it suffices here to say that the accused have not presented cause for reversal in these cases.

## II Alleged Failure to Permit Defendant's Retainer of Counsel of His Choice.

Another Sixth Amendment question is raised by McGill's contention that his right to the assistance of counsel was violated when the Court summarily denied his *pro se* motion to dismiss appointed counsel, and when he was subsequently compelled to go to trial with court appointed counsel.

A handwritten letter signed by McGill was received by Chief Judge McGuire on June 5, 1964, four days before the beginning of the trial. The letter is short and is quoted as written:

Charles McGill
200 19th Street, S. E.
Washington, D. C.

Chief Justice McGuire
United States District Court
Washington 1, D. C.

The Most Honorable Judge McGuire

This letter in reference to criminal case No. 367–64 [238 F.Supp. 230], I the defendant, Charles McGill would like to notify the court at this time that I am able to afford my own counselor, and would like for the legal aid counselor dismiss. I also would like for the court to reduces my bond from $10,000 to a reasonable amount. I hope the court will consider this, and pray that the court will take this under advisement.

Respectfully yours
/s/ Charles McGill
Charles McGill # 141891

At the foot of the letter, Chief Judge McGuire noted "Denied" and subscribed his signature and the date, 6/5/64.

---

2. A significant aspect of early appointment of counsel is the stimulation of early investigative work. This is not impeded by proceeding with arraignment where counsel have not yet been assigned assuming appointment as promptly as practicable thereafter, as in this case.

Aside from what may be inferred from this letter, the record is void of any indication whether or why McGill was dissatisfied with his court appointed counsel. In his notice of appeal, dated July 23, 1964, he claimed no error in denial of his motion to have his attorney relieved. Similarly, no allegation is made and nothing in the record suggests that McGill was inadequately represented at the 5-day trial, or that he wished to forgo the assistance of counsel.

We presume that in ordinary circumstances an accused who finds that funds have become available may, for reasons sufficient unto him, conclude that he prefers to have his own paid counsel, without necessarily claiming that appointed counsel is inadequate. Here, however, his request was made at a late date, only some four days in advance of the date set for trial. He did not say whom he would prefer to represent him. His letter gave no indication or assurance that granting his request could be accomplished without delay of trial date. No other attorney made an appearance or offer of availability in McGill's behalf.

Under the circumstances this brief request, without any explanation of why the accused wished to remove his counsel or how he wished to proceed thereafter, was insufficient to put off the trial or effect a change in his representation. There is a marked distinction between this case and United States v. Plattner, 330 F.2d 271 (2d Cir. 1964), upon which McGill relies. Plattner acted promptly in asking the court to relieve assigned counsel and to allow him to act *pro se*. Moreover, since Plattner was necessarily present in any event, he suggested no delay in seeking to come forward to represent himself.

McGill, having been arrested on January 23, 1964, had ample time to secure the services of an attorney of his own choice. There is no indication in the record nor has any suggestion been made that McGill was in any way impeded in seeking to retain counsel, or that he wished to waive his right to the assistance of counsel and to proceed *pro se*. Counsel appointed by this court allude in passing to the fact that the record before us does not contain an affidavit of McGill in the District Court attesting to his indigence. The point is without materiality when the available files are examined.[3]

It was not claimed that McGill did not, at least at the time his counsel was appointed, desire the help of such counsel. If anything, the District Judge is to be commended, not censured, for providing McGill with appointed counsel even though the formal paper record was not airtight. We see no prejudice or denial of substantial rights.

### III The Reasonable Doubt Charge

Appellants also contend that the passage of the charge relating to definition of reasonable doubt, set out in the margin,[4] erroneously departed from the definition approved by this court.

---

3. It appears on full examination that McGill did file an affidavit in support of an application to proceed without prepayment of costs. The affidavit was signed and sworn to on April 20, 1964, and filed the next day. On that day the legal aid attorney who represented McGill at the trial was appointed. The affidavit and order of appointment are found in the jacket of criminal case number 287–64 to which several references are made at pages 2 and 3 of the brief for McGill. The indictment in that case, except that it makes no mention of Barnhart, is identical with the April 27, 1964, indictment pursuant to which McGill and

Hinton were convicted in the case here on appeal.

4. The trial judge instructed the jury as follows:
Proof beyond a reasonable doubt does not mean proof beyond all doubt whatsoever. It does mean proof to a moral certainty and not necessarily proof to an absolute or mathematical certainty. A reasonable doubt is not a vague, speculative or obscure doubt. Rather, it is such a doubt as would cause you to hestitate to act upon it in the graver and more important transactions of life.
If, after an impartial consideration of all the evidence you can say to your-

It is agreed by counsel for both the accused and the Government that the charge was correct insofar as it instructed the jury that the proof would not be beyond a reasonable doubt, and there would exist a reasonable doubt, and not a mere vague, speculative or obscure doubt, if it were "such a doubt as would cause you to hesitate to act upon it in the graver and more important transactions of life." That is essentially the language of Justice Vinson, later Chief Justice of the United States, in Bishop v. United States, 71 App.D.C. 132, 138, 107 F.2d 297, 303 (1939),[5] cited with approval in Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). As he indicates, the time used to consider the evidence does not signify hesitation to act after consideration of the evidence. See also Holt v. United States, 218 U.S. 245, 254, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

▪ Appellants say in effect that the charge should have stopped there and that error was inserted when the judge charged that "proof beyond a reasonable doubt is such proof as will result in an abiding conviction of the defendants' guilt on your part, such a conviction as you would be willing to act upon in the more weighty and important matters pertaining to your own affairs." See Scurry v. United States, 468 U.S.App.D.C. ——, 347 F.2d 468 (decided April 15, 1965), and cases cited therein.

Since persons may be willing, indeed required, to act on important matters in their lives notwithstanding the most profound doubts and painful hesitation, these two portions of the charge, considered seriatim, may generate confusion, albeit the claim of confusion here falls short of the confusion presented by the *Holland* charge, where the Supreme Court affirmed.

The Government supports the charge as a conscientious effort by the trial judge to explain the matter in two ways—first telling the jury affirmatively what a reasonable doubt is, *i. e.* what negates proof beyond a reasonable doubt, and then telling them negatively what is not a reasonable doubt, *i. e.* what constitutes proof beyond a reasonable doubt. The Government further argues that the two parts of the charge are neither inconsistent nor productive of confusion since the latter part of the charge obviously carries with it the analysis contained in the earlier part containing the definition of reasonable doubt in terms of causing hes-

selves that you are not satisfied of the defendants' guilt, then you have a reasonable doubt. Unless there is substantial evidence of facts which exclude every reasonable theory but that of guilt, your verdict must be not guilty.

In other words, to find the defendants guilty, any reasonable theory of innocence must be excluded by the facts. But, on the other hand, if after such impartial consideration of all the evidence you can truthfully and candidly say to yourselves that you have an abiding conviction of the defendants' guilt, such as you would be willing to act upon in the more weighty and important matters pertaining to your own affairs, then you have no reasonable doubt.

In other words, proof beyond a reasonable doubt is such proof as will result in an abiding conviction of the defendants' guilt on your part, such a conviction as you would be willing to act upon in the more weighty and important matters pertaining to your own affairs.

5. Justice Vinson said: "Reasonable doubt is a doubt arising from the evidence, or from a lack of evidence, after consideration of all the evidence. It is not a vague, speculative, imaginary something, but just such a doubt as would cause reasonable men to hestitate to act upon it in matters of importance to themselves."

Compare the Manual of Uniform Jury Instructions in Federal Criminal Cases, prepared by a Committee of the Seventh Circuit Judicial Conference, which recommends use of the following for the charge on reasonable doubt, see 33 F.R.D. 523, 567 (1963):

"6.01–3. *Reasonable Doubt.* A reasonable doubt means a doubt that is based on reason and must be substantial rather than speculative. It must be sufficient to cause a reasonably prudent person to hesitate to act in the more important affairs of his life."

itation to act thereon in the more important transactions of life. The Government asks that the court consider its contention so as to avoid precipitate and unnecessary revision of instructions that have worked well over time.

This case, like *Scurry*, is readily disposed of on the ground that counsel did not take exception to the charge when given, and hence the judgment must be affirmed.

We are dealing here with a key portion of the charge, a passage likely to impress itself deeply on the jury to the undoubted advantage of the accused, and to resonate in the jury room as a standard of their function and responsibility. But the standard underlying the resonance cannot be defined objectively like that of a tuning fork providing absolute pitch. The standard of mental convincement of a jury may only be approached with words groping to express what is nearly indefinable. Some day perhaps the relevant concepts may be given a quantitative reference, perhaps in terms of probability,[6] but meanwhile, we must communicate with words, limited though they may be, for the judge to impress upon a jury the awesome task that is theirs.[7]

Possibly the problem can be approached by confining instructions in all cases to laconic and approved phraseology.[8] Yet defense counsel may well prefer the emphasis bestowed by repetitions of references to reasonable doubt, notwithstanding the Supreme Court's comment that judicial attempts to explain and elaborate on the term reasonable doubt "do not usually result in making it any clearer to the jury." Miles v. United States, 103 U.S. 304, 312, 26 L. Ed. 481 (1880); Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). In the absence of a set liturgy there is always the risk that subsequent logical parsing, perhaps by new counsel, may uncover possible confusions and misapprehensions in the printed record that were not fairly present in the aura of the court room. The old saw tells us that it is particularly when there is little to argue on the facts that a lawyer searches for points on the law. The sport of syntax should not be indulged when trial counsel did not make timely objection except in a clear case of prejudice. No such prejudice has been shown here.

At this trial neither counsel nor the judge had the benefit of the storm signals flagged by this court for the traditional reasonable doubt charge.[9] In the future a trial judge who uses the "abiding conviction" phrase should, and on request would be required to, formulate the charge so as to clarify that he is referring to an abiding conviction of guilt which would cause reasonable men to act on the more weighty and important

---

6. Some kind of quantitative reference might well be more meaningful for an charge that they should acquit unless their increasingly computer-oriented society. Even today, while it would not be seemly to introduce such a note in a solemn judicial process, it may well be that many jurors would be more enlightened by a charge that they should acquit unless their conviction was so strong they'd be willing to give 10-to-1 odds they were right.

In the last analysis, however, any quantitative approach would probably leave a crucial middle ground to be resolved in fundamental conceptions expressible only in words. Compare the effort of Judge Learned Hand to quantify the concept of "monopoly" in United States v. Aluminum Corp. of America, 148 F.2d 416, 423–424 (2d Cir. 1945).

7. It is at least interesting to note that on an occasion when Congress revised a statute in order to reflect the essence of the reasonable doubt standard, it did this through a statutory requirement of "clear proof." See United Brotherhood of Carpenters and Joiners v. United States, 330 U.S. 395, 406, 67 S.Ct. 775, 91 L.Ed. 973 (1947), discussing sec. 6 of the Norris-LaGuardia Act, 47 Stat. 70, 71.

8. Compare the Manual of Uniform Instructions evolved in the Seventh Circuit, cited in footnote 5. This is a guide, not a requirement.

9. The case was tried in June 1964, prior to our decision in Jones v. United States, 119 U.S.App.D.C. 213, 338 F.2d 553, 555 (1964).

matters of their own affairs without hesitation continuing beyond the time required for consideration of the evidence. The Government would coordinate the two portions of the charge through implication of such a connecting link, but the defendant is entitled to the clarification of a link that is express and not merely implied.

The foregoing points suggest that counsel appointed by this court have left no stone unturned. That is their right and their duty in behalf of their indigent clients and the court welcomes their prod leading us to plumb deep before we announce that the judgments are

Affirmed.

WILBUR K. MILLER, Senior Circuit Judge, concurs in the result.