VITORATOS *v.* MAXWELL, WARDEN.

(No. 16054—Decided September 22, 1965.)

United States Court of Appeals, Sixth Circuit.

*Mr. William Vitoratos, in propria persona.*
*Mr. William B. Saxbe,* attorney general, and *Mr. John Cianflona,* for appellee, on brief.

Before WEICK, Chief Judge, MILLER, Circuit Judge, and MATHES, Senior District Judge.*

MATHES, Senior District Judge.   Appellant, who is now a prisoner of the state of Ohio serving a sentence of ''not less than one or more than twenty years,'' appeals from a judgment denying his petition for the writ of habeas corpus.

The material facts disclosed by the record are the following.   On January 12, 1959, appellant was indicted in the Court of Common Pleas of Summit County, Ohio, for the crime of

———
*William C. Mathes, Senior District Judge of the Southern District of California, sitting by designation.

sodomy as defined in Section 2905.44, Revised Code; he was arrested on March 26, 1959, and arraigned on March 30, 1959. His first claim is that he was denied "due process of law" under the Fourteenth Amendment by being deprived of an attorney at his arraignment.

The transcript of the arraignment proceedings in this connection discloses the follows:

"The Court: Did you receive a copy of the indictment?

"The Defendant: Yes I did.

"The Court: You have read it?

"The Defendant: Yes, I have.

"The Court: You understand it?

"The Defendant: I do.

"The Court: Do you have counsel?

"The Defendant: Yes, I have.

"The Court: Who?

"The Defendant: Dan Gennett from Canton, Ohio.

"The Court: What is your plea, guilty or not?

"The Defendant: Your Honor, at this time I would like to continue this until my attorney is here. As yet he doesn't know of this preliminary hearing.

"The Court: I will enter a technical plea of Not Guilty for you.

"The Defendant: Your Honor, may I use the telephone at the Sheriff's office to get a hold of my attorney?

"The Court: Mr. Vaughn, can something be worked out?

"Mr. Vaughn: Yes sir."

It appears most likely that appellant had not in fact retained an attorney as he represented to the state court at the time of arraignment; for only three days later the presiding judge, before whom appellant had been arraigned, entered the following order:

"This Day, to wit: The 2nd day of April A. D., 1959, it appearing that the said defendant, Bill Vitoratos aka Bill Victor, is in indigent circumstances and unable to employ counsel, the court hereby appoints Attorney Bill Watson as counsel to defend him in this case."

The case was set for trial on April 17, 1959, but on April 14th Watson on behalf of appellant moved for a postponement of the trial, which motion was denied. Attorney Watson then,

for reason not revealed by the record, moved for leave to withdraw as appellant's attorney. The court granted the motion by the following order:

"On this day, April 16, 1959, the court hereby permits William Watson, attorney of record, to withdraw from said case and appoints Robert Blakemore to represent the defendant in said matter."

The trial date was postponed until April 21, 1959, at which time the record shows the following occurred, *inter alia*:

"Mr. Blakemore: Your Honor please, I was appointed by this court to serve as counsel for the defendant, William Vitoratos. I was advised by Mr. Vitoratos yesterday afternoon he prefers that I not serve in this capacity at any time after this, and I would at this time like to ask the court to allow me to withdraw as counsel for the defendant, William Vitoratos.

"The Court: Why does he not want you to represent him?

"Mr. Blakemore: Probably the defendant could tell you that better himself, your Honor, except I would say this: We do not see eye to eye probably on the handling of the defense in this entire case.

"The Court: I will hear from you, sir. What is your reason for wanting to discharge Mr. Blakemore?

"The Defendant: Your Honor, there is several factors in this case that we totally disagreed upon, and I don't want Mr. Blakemore handling my case.

"The Court: Whom do you wish to have handle your case?

"The Defendant: I would like to make one phone call to obtain money, or get to a telephone to get money here to hire my own personal attorney. I haven't been able to make a phone call through the Sheriff's office.

"The Court: How about that, Mr. Lynch?

"Deputy Lynch: He didn't request a phone of me, so I cannot answer that."

"The Defendant: * * * Mr. Danesis came over as co-counsel for Mr. Blakemore as a favor. I didn't ask Danesis to make long distance calls, but I would like to make several calls, your Honor, to obtain money to hire my own personal attorney. Would you grant me that wish?

"The Court: No, I am not going to grant you that wish because you have had ample opportunity, as I see it, to do that.

You are entitled to be represented by counsel, and I want to see that you are represented.

"The Court: * * * in order to see that you had proper representation this court ordered Mr. Blakemore to defend you, Mr. Blakemore having had considerable experience in the trial of criminal cases both from the prosecution standpoint and on behalf of the defendant, and I know of no one who could represent you more adequately than Mr. Blakemore.

"Now, he is a lawyer and you are not, and I would certainly recommend that you follow his advice.

"The Defendant: Well, your Honor, I am entitled to counsel and I will not have Mr. Blakemore as my counsel.

"The Court: Well then, you may, if that is what you wish, the court will let you represent yourself, because I appointed what I have considered to be highly eminent counsel for a criminal case. Now, that's up to you.

"The Defendant: I cannot represent myself, as you well know.

"The Court: Then the court will order Mr. Blakemore to represent you.

"The Defendant: Well, I do not want Mr. Blakemore to represent me.

"The Court: Doesn't make any difference what you want. It is my job to see that you are represented, and I am going to have Mr. Blakemore represent you, so we will go forward as soon as we get the jury up here at 1:15, and Mr. Blakemore will represent you.

"The Defendant: That I will not hold still for, your Honor.

"The Court: I don't care what you will hold still for. I am telling you.

"The Defendant: I just don't want Mr. Blakemore to represent me. That is simple, and it is my privilege not to have him represent me."

Thereafter the case proceeded to jury trial with attorney Blakemore representing appellant. The trial was concluded two days later, on April 23rd, when the jury returned a verdict of guilty.

The record further shows that the state court "thereupon ordered the defendant to Lima State Hospital at Lima, Ohio for mental examination not to exceed sixty (60) days." Such

examination was required by law, once appellant had been convicted of violation of Section 2905.44, Revised Code. [Section 2947.25, Revised Code.]

On April 27, 1959, the trial court entered an order permitting attorney Blakemore to withdraw from the case. The record next shows that on June 15, 1959, the appellant "being in court and accompanied by counsel," the court held a "hearing on the report from Lima State Hospital" and found that appellant was "not mentally ill, mentally deficient, nor a psychopathic offender." The court next "considered a motion for a new trial and said motion was duly overruled." Then "the court * * * inquired of said defendant if he had anything to say why sentence should not be pronounced against him and defendant showing no good and sufficient reason," the court sentenced appellant to an indeterminate term of "not less than the minimum of one (1) year and not more than the maximum of twenty (20) years, as provided by Section 2905.44, Revised Code, for punishment of the crime of sodomy. * * *" Since probation was not available to appellant [Section 2951.04, Revised Code], that was the only sentence which could have been imposed under Ohio law [Section 5145.01, Revised Code].

Appellant appealed the judgment of conviction and sentence to the Court of Appeals of Summit County, Ohio, where the judgment was affirmed on January 14, 1960. [Case No. 4934, unreported.] On October 13, 1960, the Ohio Supreme Court denied appellant's motion for leave to appeal to that court [case No. 36,565, unreported]; and the United States Supreme Court thereafter denied his petition for a writ of certiorari [*Vitoratos, alias Victor,* v. *State* (1961), 366 U. S. 920, 81 S. Ct. 1097, 6 L. Ed. 2d 242].

More than two years later, on August 12, 1963, appellant's petition for the writ of habeas corpus was filed in the District Court. Henry Clay Scott, Esq., was appointed as appellant's attorney and has represented him, proceeding in forma pauperis, in the District Court and upon the argument of this appeal, although it appears that the "brief of appellant," filed with the clerk of this court on August 6, 1964, was "in pro per," as was the "supplemental brief of appellant," filed October 23, 1964, and the "reply brief of appellant," filed December 8, 1964.

Appellant's primary contentions as to claimed denial by

the Ohio courts of his Fourteenth Amendment rights are found in the various briefs filed by him "pro per," and by his attorney in his behalf, and in the transcript of the habeas corpus hearing in the District Court.

As stated above, the first claimed denial of "due process of law" is alleged to have occurred at his arraignment in the Court of Common Pleas, where a plea of not guilty was ordered entered on behalf of appellant while he stood at the bar without counsel. Appellant contends that, because he was not represented by an attorney at his arraignment, he lost many valuable rights required to be asserted prior to entry of plea. [See Sections 2941.59, 2943.03, Revised Code.] But there is no allegation that he has ever attempted to exercise any of these rights, nor is there any allegation in his petition or elsewhere that any of such rights would have been appropriate or available in his case had they not been allegedly "waived" by entry of the not guilty plea.

Moreover, as the Supreme Court of Ohio has observed with respect to failure to appoint counsel prior to entry of a not guilty plea, arraignment in Ohio is not always a "critical stage" of the trial process. [*Dean* v. *Maxwell* (1963), 174 Ohio St. 193; accord, *Everheart* v. *Maxwell* (1964), 175 Ohio St. 514.] This is equally true when gauged in light of the Sixth Amendment right to counsel asserted here. [*McGill* v. *United States* (D. C. Cir. 1965), 384 F. 2d 791; cf. *Gideon* v. *Wainwright* (1963), 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799.]

In Ohio, as contrasted with some other states [see: *Hamilton* v. *State of Alabama* (1961), 368 U. S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114; *White* v. *State of Maryland* (1963), 373 U. S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193], an accused may change his plea "for good cause shown" at any time prior to commencement of trial [Section 2943.03, Revised Code], and denial of a motion to change plea following appointment of counsel "would constitute such good cause that a subsequent refusal by the trial court to permit a change of plea would constitute an abuse of discretion" reviewable as such [*Dean* v. *Maxwell, supra,* 174 Ohio St. at 196]. As explained in *Dean* v. *Maxwell, supra,* "where an indigent accused pleads to an indictment without the benefit of counsel, the subsequent appointment of counsel to act on his behalf places the accused, for practical legal purposes

in the same position he was in prior to his arraignment." [174 Ohio St. at 196.]

But even if it be assumed that the arraignment was a "critical stage" of this non-capital case [cf. *Hamilton* v. *State of Alabama, supra,* 368 U. S. 52, 82 S. Ct. 157], appellant did not plead guilty [cf. *White* v. *State of Maryland, supra,* 373 U. S. 59, 83 S. Ct. 1050; *Townsend* v. *Burke* (1948), 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690]. Neither is it contended that any incriminating statements were elicited in the absence of counsel [cf. *Escobedo* v. *State of Illinois* (1964), 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977]; *Massiah* v. *United States* (1964), 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246; *Crooker* v. *State of California* (1958), 357 U. S. 433, 78 S. Ct. 1287, 2 L. Ed. 2d 1448; *Cicenia* v. *La Gay* (1958), 357 U. S. 504, 78 S. Ct. 1297, 2 L. Ed. 2d 1523], nor that appellant was put to trial without counsel [cf. *Gideon* v. *Wainwright, supra,* 372 U. S. 335, 83 S. Ct. 792].

We may therefore borrow the words of Chief Judge Murrah in *Johnson* v. *United States* (10th Cir. 1964), 333 F. 2d 371, involving the Sixth Amendment right to assistance of counsel at arraignment in the Federal Courts, to say:

"We think * * * the trial court adequately protected the right of appellant to the assistance of counsel when it directed the entry of a plea of not guilty. No statement was made against the accused. He made no incriminating statement whatsoever, and was not called upon to waive assistance of counsel or any other constitutional right. He cannot, therefore, complain of the deprivation of any constitutional right at this [arraignment] stage of the proceedings." [333 F. 2d at 373.]

[See also *Black* v. *United States* (9th Cir. 1965), 348 F. 2d 159.]

In *Crooker* v. *State of California, supra,* 357 U. S. 433, 78 S. Ct. 1287, Mr. Justice Clark announced for the court the common-sense rule that:

"[S]tate refusal of a request to engage counsel violates due process * * * if the accused is deprived of counsel * * * for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infest his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' * * * The latter determination necessarily de-

114

pends upon all the circumstances of the case." [357 U. S. at 439-440, 78 S. Ct. at 1292.]

Assuming that the authority of *Crooker v. State of California*, insofar as it involves a confession made without benefit of prisoner-requested counsel, has been "weakened by the subsequent decisions" [*Escobedo v. State of Illinois, supra*, 378 U. S. at 492, n. 15, 84 S. Ct. at 1766], there is no reason to suppose that the above-quoted rule has been replaced by what would of necessity be a hypertechnical alternative. Especially so, since the quoted rule is in keeping with the spirit of Rule 52(a) of the Federal Rules of Criminal Procedure which directs that: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Appellant's next claim—lack of effective assistance of counsel—must be considered against the background of the actual circumstances at trial. The record before us is far from one which presents a picture of an accused who is bewildered, untutored and uninformed as to judicial proceedings. One cannot review what took place in the Court of Common Pleas prior to trial without being impressed that appellant showed himself to be uncommonly wise in the ways of the criminal courts and, from the beginning, was a rather impudent defendant, bent upon delaying trial-court proceedings by any and every means he could conjure up, even to the verge of contempt.

As the court observed in *Powell v. State of Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158:

"It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." [287 U. S. at 53, 53 S. Ct. at 58; accord, *Crooker v. State of California, supra*, 357 U. S. at 439, 78 S. Ct. 1287.]

Such "fair opportunity" was, however, afforded appellant here. At the close of his arraignment on March 30th, the Presiding Judge arranged for appellant to be permitted to telephone his alleged Canton, Ohio, attorney. Only three days later the court, finding that appellant was "in indigent circumstances and unable to employ counsel," appointed counsel for him. On April 16th, a second attorney was appointed to represent him. It was not unreasonable then for the trial court, on

April 21st, to deny appellant still further opportunity to attempt to raise money with which to retain some other counsel more preferable to him, especially when every indication was that appellant was determined to be dissatisfied so long as this stratagem would serve to delay the trial. [See *McGill* v. *United States, supra,* 348 F. 2d 791; cf. *United States* v. *Plattner* (2nd Cir. 1964), 330 F. 2d 271.]

Of course "representation in the role of an advocate is required" [*Ellis* v. *United States* (1958), 356 U. S. 674, 675, 78 S. Ct. 974, 975, 2 L. Ed. 2d 1060], but there is nothing in the record to suggest that attorney Blakemore was anything less throughout the trial. Appellant makes no charge that he had a defense which was not presented. [Cf. *Brubaker* v. *Dickson* (9th Cir. 1962), 310 F. 2d 30, 32.] Nor does he assert that attorney Blakemore was not experienced in the trial of criminal cases. To the contrary, appellant intimates that his court-appointed attorney was perhaps too experienced to permit appellant to dictate the conduct of the defense.

Of especial significance here is the admonition that: "We must guard against the magnification on appeal of instances which were of little importance in their setting." [*Glasser* v. *United States* (1942), 315 U. S. 60, 83, 62 S. Ct. 457, 471, 86 L. Ed. 680.]

In his briefs, but not in his petition, appellant asserts that he was without counsel at the time of sentencing. However, the record before us recites that appellant was "accompanied by counsel," and that a motion for a new trial was presented and overruled.

The Supreme Court of Ohio has declared that "the absence of counsel at the time of sentencing is not reversible error unless the accused was prejudiced thereby." [*Thomas* v. *Maxwell* (1963), 175 Ohio St. 233, 235.] This would appear to be the Federal standard as well, when Sixth-Amendment rights to counsel at the time of sentencing are involved; at least in noncapital cases where prejudice to substantial rights is not presumed. [See: *Crooker* v. *State of California, supra,* 357 U. S. at 439-440, 78 S. Ct. 1287; Fed. R. Crim. P. 52(a); cf. *Gideon* v. *Wainwright, supra,* 372 U. S. 335, 83 S. Ct. 792; *Hamilton* v. *State of Alabama, supra,* 368 U. S. 52, 82 S. Ct. 157.]

We have been unable to discern any possible prejudice to any "substantial rights" of appellant [Fed. R. Crim. P. 52(a)], assuming that he did stand at the bar without counsel at the time of sentencing. Convicted as he was of the crime of sodomy, the Ohio court was forbidden to grant him probation. [Section 2951.04, Ohio Revised Code.] The Ohio legislature had specified that a minimum term of one-year's imprisonment was mandatory. Moreover, its further mandate required that "Courts imposing sentences to the penitentiary for felonies * * * shall make such sentences general and not fixed or limited in their duration." [Section 5145.01, Revised Code.] Under these circumstances— with these legislative fetters upon the trial judge —it is not overstatement to say that appellant's sentencing was little more than a ministerial ceremony.

We are convinced that appellant was fairly tried and fairly convicted, and that any "error, defect, irregularity or variance," which resulted in possible denial by the Ohio courts of some Federal constitutional right, in no way affected any of appellant's "substantial rights," and hence "shall be disregarded" in keeping with the mandate of Rule 52(a) of the Federal Rules of Criminal Procedure.

*Affirmed.*