**Charles SIVERSON, Petitioner,**

v.

**Michael O'LEARY and Neil F. Hartigan,\* Respondents.**

**No. 81–2155.**

United States District Court, C.D. Illinois, Danville Division.

Feb. 14, 1984.

---

\* Substituted as parties respondent pursuant to Fed.R.Civ.P. 25(d).

**507**

tioner contends that he received ineffective assistance of counsel during his trial because, once the jury began its deliberations, his lawyer abandoned him and was voluntarily absent from the trial thereafter.

The case is here on remand from the Court of Appeals which reversed this court's dismissal of the petition for failure to exhaust state remedies. *See Siverson v. DeRobertis*, 705 F.2d 461 (7th Cir.1983).[1]

### I.

On November 6, 1979, the petitioner was convicted of robbery and aggravated battery. He was sentenced to concurrent terms of twelve years on the robbery charge and ten years on the battery charge.

The petitioner's trial lasted two days. At approximately 5:40 p.m. on the second day, the jury began its deliberations. (Volume III, R. 428.) At 9:10 p.m., the jury requested that the testimony of two prosecution witnesses, Michael Carbone and Timothy Carbone, be read back to them. The petitioner's attorney was not present in the courtroom. The trial judge instructed the bailiff to tell the jury that he would consult with counsel for both the prosecution and the defense before agreeing to read back the testimony. (Volume III, R. 429.) The record indicates that the trial judge discussed the jury's request with the attorneys from the State's Attorney's office and that they had no objection to the reading back of the testimony of the Carbone witnesses. The record further indicates that the petitioner's attorney was contacted by the trial judge by telephone and that he had no objection to the jury's request. Finally, the trial judge talked with the petitioner and offered the petitioner the opportunity to talk with his attorney over the telephone. The petitioner said that he did

Carl W. Telford, LaSalle, Ill., for petitioner.

Michael V. Accettura, Asst. Atty. Gen., Springfield, Ill., for respondents.

### ORDER

BAKER, District Judge.

The petitioner, Charles Siverson, seeks a writ of habeas corpus on the ground that his state court conviction violated his Sixth Amendment rights. Specifically, the peti-

**1.** The Court of Appeals remanded the case to rule on the merits of petitioner's claim of ineffective assistance of counsel and to determine whether the petitioner had waived the question of the constitutionality of the statute under which he was sentenced. The petitioner has voluntarily withdrawn the question of the constitutionality of the sentencing statute from consideration.

not wish to talk with his attorney and that he had no objection to the reading back of the testimony of the two witnesses. (Volume III, R. 430.) The court then brought the jury back into open court and asked them if they had reached a verdict with respect to any of the charges. When it was determined that they had not, the court exercised its discretion and instructed the Court Reporter to read back the testimony of the two Carbone witnesses. (Volume III, R. 431–32.) The jury was then directed to return to the jury room and resume deliberations.

At 9:45 p.m., the trial judge discussed, with the State's Attorneys and the petitioner, the question of whether the jurors should be allowed to continue deliberations or whether they should be sent home for the night and ordered to resume their deliberations the following morning. The petitioner's attorney was not present. The State's Attorney suggested that the jury be allowed to deliberate for at least another hour. The court stated that this was "okay" and the petitioner stated that he had no objection. (Volume III, R. 433.) The court, however, continued its consideration of the issue and stated:

THE COURT: Okay.

Well, I think at this time we will just let them deliberate a while longer this evening and see what happens. I realize there is a heavy volume of work to be done and that there are eight Counts. I do not want to make it appear coercive upon the Jury that they must reach a verdict tonight. I would prefer them to give their considered deliberation to it and if I thought that that would be more likely to occur tomorrow morning I guess I would be persuaded that we should recess their deliberations at some stage this evening.

MR. VOGEL: I agree with that, Your Honor. I would suggest waiting another hour.

THE COURT: From recent experience I have had good luck in terms of recessing deliberations and letting the jury go home and then return to complete them on the next day when the hour has been late, but we will just let them go for the time being and see what occurs.

DEFENDANT: Yes, sir.

(Volume III, R. 433.)

At 11:07 p.m., the State's Attorneys and the petitioner were still in the courtroom. The petitioner's defense counsel was still not present. The court stated that it was going to propose that it order the jury to cease its deliberations until 9:30 a.m. the following morning and admonish them not to discuss the case. Mr. Vogel, one of the prosecutors, asked the court to consider asking the jury what they wanted to do. The court stated that it would ask the jury whether or not they had reached a verdict. If the jury had not reached a verdict, the court intended to ask them if they could reach one within ten minutes. If they could not, the court intended to send them home. (Volume III, R. 434.)

The petitioner then asked the judge if the State's Attorney was going to make any additional statements to the jury. The State's Attorney and the court informed the petitioner that no additional statements would be made by the State's Attorney and that nobody could talk to the jury. The court then asked the petitioner if he had any comments as to the proposed handling of the jury. The petitioner stated that he did not. (Volume III, R. 434.)

At this point in the trial, Mr. Bernardi, the other State's Attorney, requested that the court inform the petitioner that he had a right to move for a mistrial. Mr. Bernardi further stated that if the petitioner was unable to make that decision on his own, that he should be allowed to contact his attorney in order to make a reasonable decision as to the matter. The judge asked the petitioner if he wanted to talk to his attorney and the petitioner asked again if

anyone was going to ask the jury any questions. Upon being informed again that no one could ask the jury any questions, the petitioner stated that he had "no objection." (Volume III, R. 435.) The judge again asked the petitioner if he wanted to talk to his attorney and the petitioner stated that he did not. The judge then requested that the jury be brought in, but Mr. Bernardi further suggested that the petitioner might not be fully aware of his rights at this point in the trial:

MR. BARNARDI: Your Honor, I don't think it is clear that the Defendant knows what a mistrial is and what his rights are at this point.

THE COURT: Well, it is my opinion there would be no cause for a mistrial at this point in that there has been no indication that the Jury is deadlocked and simply that the volume of matters which they have to consider; being eight Counts here, is more than it appears they are going to be able to handle given the lateness of the hour. I don't believe there is a cause for a mistrial with respect to either side at this point.

MR. BERNARDI: Am I correct they have not reported that they are hung yet, that they have not been able to reach a verdict?

THE COURT: They have not so indicated to the Court. The Court has no indication they are deadlocked.

(Volume III, R. 435.)

The judge instructed the bailiff to bring the jury back into court. The bailiff informed the court that the jury requested that they be given ten more minutes. The judge told the bailiff to tell the jury to take as much time as they needed to complete their deliberations. (Volume III, R. 436.)

The jury subsequently returned to open court, stating that they had reached a verdict. The State's Attorneys were present in the courtroom, as was the petitioner. The petitioner's attorney was not present in the courtroom when the jury returned their verdict. The verdict was read in open court and the petitioner was found guilty of three counts of the eight-count indictment. After the verdict was read, the court stated that the verdict form was signed by all twelve jurors and then asked if anyone desired to poll the jury. The following colloquy ensued:

MR. VOGEL: The State does not.

MRS. NEWBORN: [The petitioner's mother]: We don't know what you mean?

THE COURT: Do you wish to have the Jury polled as to their Verdict?

DEFENDANT: I don't understand.

THE COURT: To determine whether each of the jurors did, in fact, sign the Verdict that reflects their true verdict?

DEFENDANT: No, sir.

THE COURT: Very well.

(Volume III, R. 438.)

After it was decided that the jury would not be polled, the trial judge entered judgments of acquittal and conviction, as appropriate, against the petitioner. The jury was then released. After the jury was removed from the courtroom, the petitioner asked the trial judge to tell him the counts on which the jury had found him guilty. The judge told the petitioner what he had been convicted of and those counts upon which he had been acquitted and then remanded the petitioner to the custody of the sheriff. The petitioner's defense counsel had not returned to the courtroom since the jury began its deliberations.

## II.

The petitioner appealed his state court conviction to the Illinois Appellate Court for the Fourth District. On appeal, the petitioner contended that he was deprived of effective assistance of counsel, that he was sentenced under an unconstitutional statute, and that his sentence was excessive. The appellate court affirmed the circuit court's judgment.

With respect to the petitioner's claim of ineffective assistance of counsel, the appel-

late court noted that the court-appointed defense attorney was absent from the courtroom three times during and after the jury's deliberations. The appellate court first stated that: "While the defendant's lack of counsel during these critical stages constituted constitutional error, we find that the defendant's failure to file a post-trial motion resulted in the waiver of these issues." *People v. Siverson,* No. 15975, slip op. at A–2 (Ill.App.Ct., 4th Dist., July 23, 1980) (unpublished order as modified on denial of rehearing August 6, 1980). Nevertheless, part of the petitioner's claim on appeal to the Illinois Appellate Court was that he was denied effective assistance of counsel because his trial attorney had failed to file any post-trial motions. Accordingly, the appellate court considered the merits of the petitioner's ineffective assistance of counsel claim, stating: "When an incompetence argument is based in part on the failure to file a post-trial motion, the reviewing court should not regard the issues as having been waived but instead ought to examine their merits." *Id.* at A–3.

Upon consideration of the merits of the petitioner's claim, the appellate court held: "[C]ounsel's presence in the later stages of the trial would not have altered the outcome. And assuming the validity of the defendant's other claims of incompetence on the part of his attorney, we do not find that they, even taken together, would have affected the outcome of the trial." *Id.*

The petitioner then sought leave to appeal his conviction to the Illinois Supreme Court solely on the issue that the petitioner was denied effective assistance of counsel by the absence of his trial attorney when the jury returned its verdict. The Illinois Supreme Court denied leave.

### III.

An evidentiary hearing was conducted on December 9, 1983, on the petitioner's claim of ineffective assistance of counsel. The petitioner was represented by counsel and filed a brief in support of his claim. At the

hearing, the petitioner took the stand and basically repeated the facts set forth in the trial record, indicating that his trial attorney was voluntarily absent from the courtroom once the jury began its deliberations. In addition, however, the petitioner stated that, as the jury returned to open court to give their verdicts, two of the female jurors were crying, or had tears in their eyes, and one female juror was shaking her head back and forth. The petitioner's mother, (first name) Newborn, also testified at the evidentiary hearing. Mrs. Newborn corroborated her son's statements that the court-appointed defense counsel was absent from the courtroom once the jury began its deliberations and that three of the female jurors were either crying, had tears in their eyes, or were shaking their heads when the verdicts were announced.

For a response, the Attorney General presented only those portions of the trial transcript relating to the events of the trial subsequent to the beginning of the jury deliberations. The Attorney General represented to the court that the petitioner's trial attorney had absolutely no recollection of the petitioner's trial and that the attorney's testimony would be useless. The petitioner's attorney stipulated to the fact that the trial attorney had absolutely no recollection of the petitioner's trial.

### IV.

With this factual background, the legal question presented to the court is whether the conduct of trial counsel met minimum professional standards. *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 104 (1975). Stated another way, the question is whether the voluntary absence of the petitioner's attorney deprived the petitioner of the right to counsel at a vital stage of the proceedings against him. The cases of *United States v. Smith,* 411 F.2d 733 (6th Cir.1969) and *Thomas v. Hunter,* 153 F.2d 834 (10th Cir. 1946) are persuasive precedents. In *Smith* the defendant was competently represented

by counsel until the case was submitted to the jury for its consideration. When the jury announced that it was ready to return its verdict, it was determined that counsel for the defendant could not be present because he was ill. The trial court proceeded without defense counsel and received the jury's verdict and polled the jury. In holding that the defendant was deprived of the right to counsel the court said:

> There can be no doubt that the return of the verdict by the jury is a "stage in the proceedings" against the accused. We deem it to be a critical stage. It is the pinnacle of the trial, the point when the jury pronounces the fate of the accused, guilty or not guilty. All the efforts of the prosecution and the defense in all prior stages of the proceedings are directed toward the goal of obtaining the desired result at this point in the trial. To consider this point of the proceedings as "non-critical" is to take an unrealistic view of a criminal prosecution. Little imagination is required to foresee situations in which the rights or the position of the accused could be prejudiced by failure to have the "guiding hand of counsel" at the moment when the jury returns its verdict. *See Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157 [158], 7 L.Ed.2d 114 (1961); *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55 [64], 77 L.Ed. 158 (1932); and *McGill v. United States*, 121 U.S.App.D.C. 179, 348 F.2d 791, 793 (1965). We view the presentation of evidence, the charge to the jury, the return of the jury's verdict and the imposition of the sentence as one continuous proceeding. Each stage interlocks with and is dependent upon the other to make up the complete criminal prosecution. At no point during these proceedings must the accused be required to "stand alone against the State." *United States v. Wade, supra,* 388 U.S. 218, 226, 87 S.Ct. 1926 [, 1932, 18 L.Ed.2d 1149].

In *Hunter* the court, in sending the case back to the district level to determine whether defense counsel was present when the jury returned its verdict into court, said:

> In *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527, the Supreme Court of the United States sets out in detail why a defendant is entitled to counsel at every stage of the proceedings, and states: "He requires the guiding hand of counsel at every step in the proceedings against him."

> In *Hawk v. Warden, supra* [326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61], Justice Reed said: "He had no advice of counsel prior to the calling of the jury. * * * The defendant needs counsel and counsel needs time."

> To hold that the return of the verdict into court or sentence thereafter is no part of the trial is to accord the term "trial" a very narrow and technical definition—too narrow a definition when the question under consideration is the violation of human rights and liberty guaranteed by the Constitution. We think that the return of the verdict by the jury and the imposition of sentence upon a verdict of guilty are steps in the trial of a defendant charged with the violation of a criminal statute. Certainly the return of the verdict is an important step in the trial, at which the defendant needs the guiding hand of competent counsel. He has the right and privilege of polling the jury; the right to stand and have each juror stand and face him and say whether the verdict is or is not his individual verdict.

The petitioner did not ask to have the jury polled, and did not have counsel present to advise him to do so. Several of the jurors, according to the unrebutted testimony presented at the hearing in this court, were visibly upset.

The court cannot conclude that the presence of defense counsel would not have affected the outcome of the case. It is possible that a jury poll would have revealed a coerced verdict. When the trial judge sent his bailiff to bring the jury into court to be dismissed for the evening, the

bailiff returned and said, "they want ten more minutes." The trial judge gave the jury ten more minutes and the verdicts were returned. Those facts leave a doubt as to whether a polling of the jury would have revealed a coerced verdict.

Finally, a question may be raised as to whether the petitioner voluntarily waived his right to the presence of counsel. Nothing in the record supports a knowing and understanding waiver, and even though the petitioner told the trial judge that he did not wish to have his defense counsel personally present, there is nothing to suggest that the petitioner appreciated the necessity or benefit of counsel. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1941).

IT IS THEREFORE ORDERED that the petitioner, Charles Siverson, be discharged from custody unless, within sixty (60) days of the date of this order, he is retried for the offenses for which he is currently incarcerated.