TJOFLAT, Circuit Judge,
specially concurring:
The Court holds that the presentation of inculpatory testimony to the jury in defense counsel’s absence deprived the accused of the right to the assistance of counsel in violation of the Sixth Amendment.[1] Normally, a defendant appealing his conviction on the ground that he was deprived of a constitutional right would tell us who caused the deprivation. He would point to, as relevant here, the trial judge or his own attorney, since each owed him a duty not to interfere with his right to the assistance of counsel.[2]
In this appeal, however, Roy points to no wrongdoer in particular. He doesn’t blame the trial judge, because the trial judge did nothing to prevent his attorney from being present when the prosecutor resumed his direct examination of a witness whose testimony, defense counsel well knew, would be inculpatory. Blaming the trial judge — “to say that the trial judge [had to] step in,” find the attorney, and remind him of his obligation to his client and to the court, Mickens v. Taylor, 535 U.S. 162, 179, 122 S.Ct. 1237, 1247, 152 L.Ed.2d 291 (2002) (Kennedy, J., concurring)—would be a major departure from precedent. It was not the trial judge’s, but defense counsel’s, responsibility to appear in court on time. But for defense counsel’s neglect of duty, the constitutional error the Court has created would not have occurred.
But Roy does not put the blame on defense counsel. Defense counsel was obligated under the Sixth Amendment as set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to provide Roy with effective professional assistance. This obligation governed defense counsel’s conduct out of court as well as in court. In his opening' brief in this appeal, Roy could have argued that counsel breached his Sixth Amendment Strickland obligation by failing to appear in court on time and thereby allowing incul-patory testimony to be taken in his absence.[3] But he did not.
*1190 Roy did not present the argument for two reasons. First, the argument would have failed because, as the Court’s opinion comprehensively illustrates, defense counsel’s brief absence did not prejudice Roy’s defense. Second and relatedly, in making the argument under Strickland, Roy would be identifying defense counsel as the relevant actor responsible for allegedly violating his constitutional rights.[4] But by identifying defense counsel as the relevant constitutional actor, Roy would thereby lose the opportunity to argue for a more-favorable standard of review under a new rule of constitutional law.[5]
The Court vindicates Roy’s decision to forgo Strickland by creating a new constitutional rule for the protection of the right to assistance of counsel. Under this new rule, a Sixth Amendment violation occurs if “inculpatory testimony [is] ... taken from a government witness without the presence of at least one counsel representing the defendant, regardless of whether the judge or the [prosecutor] noticed that counsel was not there”[6] (the “New Rule”). Ante at 1142. Because the defendant need not prove that the trial judge or defense counsel breached a Sixth Amendment obligation owed to the defendant, the New Rule is a no-fault rule — at least for purposes of this case. In future cases, the New Rule will operate as a fault rule based on the trial judge’s conduct because trial judges have now been placed on notice that in absence-of-counsel cases, as opposed to all other ineffective-assistance cases, Strickland is no longer the governing law.
I write separately for several reasons. First, the New Rule cannot exist side by side with Strickland. It would be nonsensi *1191 cal to entertain on direct appeal in this case two arguments, one asserting that defense counsel did not breach a Sixth Amendment obligation in causing inculpa-tory testimony to be taken in his absence, and the other asserting that defense counsel breached his Sixth Amendment obligation under Strickland in causing inculpa-tory testimony to be taken in his absence.[7] The Court avoids the problem by eliminating the latter argument by effectively removing defense counsel’s actions from the Sixth Amendment inquiry altogether. The Court does so by relying—in cursory fashion—on Vines v. United States, 28 F.3d 1123, 1127 (11th Cir. 1994), a dubiously reasoned case that provides, at best, a shaky foundation for the Court’s new rule. Moreover, in the course of displacing Strickland, the Court disregards the Supreme Court’s recent pronouncements in Woods v. Donald, 575 U.S. -, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015), and Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008), both of which suggest the correct framework for assessing Roy’s claim — it is a claim for ineffective assistance of counsel, and Strickland should govern.
Second, in holding Strickland inapplicable, the Court materially alters the scheme the Supreme Court has established to protect the right to the assistance of counsel throughout the Eleventh Circuit. In^the absence-of-counsel context, defense counsel is no longer involved in the scheme. In the void created by counsel’s irrelevance, the trial judge effectively assumes counsel’s obligation to protect the defendant’s right to the assistance of counsel, such that the trial judge is now held accountable for the harm defense counsel may have caused his client if inculpatory testimony is taken during defense counsel’s absence.
Finally, I fear that the Court’s New Rule is not only misguided as a matter of logic and precedent, but it will also cause much mischief when put into operation. The New Rule changes the standard of review this Court applies by not only replacing Strickland with Chapman, but also by effectively setting aside plain-error review when defense counsel fails to object to the introduction of inculpatory testimony taken in his absence — notwithstanding the Court’s attempt to sidestep that issue. Nor will the Court’s hinted-at suggestions for cabining the scope of the New Rule be possible to implement in practice. I take each of these points in sequence.
I.
A.
The Court’s statement “Strickland assumes the presence of counsel and is therefore inapplicable in the absence of counsel context” is drawn verbatim from Vines v. United States, 28 F.3d 1123, 1127 (11th Cir. 1994). The quoted statement in Vines is followed by this statement: “Strickland is therefore inapplicable in this case.” Id. Both statements are based on a passage in Siverson v. O’Leary, 764 F.2d 1208 (7th Cir. 1985), which Vines quotes in a footnote. The footnote reads in its entirety:
The crucial premise on which the Strickland formula rests — that counsel was in fact assisting the accused during the proceedings and should be strongly presumed to have made tactical judgments ... is totally inapplicable when counsel was absent from the proceedings and unavailable to make any tactical judgments whatsoever.
*1192 Vines, 28 F.3d at 1127 n.7 (quotation marks omitted) (quoting Siverson, 764 F.2d at 1216).
The Vines panel read Siverson as holding that a habeas petitioner’s ineffective-assistance claim — based on his attorney’s absence — was not a Strickland claim. See id. at 1127 & n.7. All that Siverson held, however, was that the Strickland presumption, “[t]he crucial premise,” that counsel’s absence might be considered sound trial strategy, is inapplicable. Siverson, 764 F.2d at 1216. “[C]ounsel’s absence ... was not a considered decision ‘based on strategy,’ but was instead merely conduct ‘grounded in negligence.’ ” Id. at 1215 (citing Crisp v. Duckworth, 743 F.2d 580, 587 (7th Cir. 1984)).
The Siverson and Vines courts reviewed the ineffective-assistance claims on collateral attack.[8] Vines, 28 F.3d at 1125; Siverson, 764 F.2d at 1210. What is important to note in these two cases is that the allegedly deficient assistance of counsel brought about by counsel’s absence was caused, as a factual matter, by the trial judge and defense counsel, acting together, because the trial judge gave defense counsel permission to be absent. When Siver-son and Vines are closely examined, we find in each that the trial judge’s conduct, though described by the courts in considerable detail, was not examined under the Sixth Amendment as a claim that the trial judge interfered with the petitioner’s right to the assistance of counsel, because that claim was not made. See Vines, 28 F.3d at 1125-26; Siverson, 764 F.2d at 1210-12. The claim actually presented was that defense counsel’s absence constituted ineffective assistance of counsel. Vines, 28 F.3d at 1125; Siverson, 764 F.2d at 1210.
The Siverson court judged counsel’s conduct using Strickland’s performance standard. Siverson, 764 F.2d at 1213-15. Counsel was found to be negligent and his performance constitutionally deficient. Nevertheless, the writ was denied. Rather than considering the consequences of the attorney’s conduct under Strickland’s prejudice standard, the Siverson court found the conduct harmless under the stricter standard set forth in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), whereby the prosecution is required to demonstrate that a constitutional error was harmless beyond a reasonable doubt. Id. at 1215-18. The Vines panel, in turn, acknowledged explicitly that it had an ineffective-assistance claim before it, but based on its reading of Siverson, held Strickland’s prejudice analysis inapplicable to the factual scenario in question. Id. at 1125, 1127. In doing so, the panel treated defense counsel’s conduct as constitutionally irrelevant. What mattered was that trial testimony was taken in his absence. The ineffective-assistance claim thus morphed into an assumption that presenting trial testimony in defense counsel’s absence, in and of itself, violates the Sixth Amendment. The presumed violation went for naught, however, because the Vines panel held that there was no prejudice shown.[9] Id. at 1130-31.
*1193 B.
A close examination of Siverson reveals why the Vines panel’s reliance on Siverson was misguided. The defendant in Siverson stood trial on several counts, including robbery and aggravated battery. Siverson, 764 F.2d at 1210. After the trial concluded and the jury retired to consider its verdict, defense counsel left the courtroom and went home, leaving a telephone number at which he could be reached. Id. at 1210-11, 1212, 1214. He remained away throughout the jury’s deliberations and the return of the verdict. Id. at 1210. During that time the defendant was forced to represent himself along with the assistance of his mother. See id. at 1211-12.
After the jury returned a verdict finding the defendant guilty on three counts, the defendant appealed his convictions to the Illinois Appellate Court. Id. at 1212. Among his assignments of error was the absence of his attorney, which, he said, constituted ineffective assistance of counsel.[10] Id. The Illinois Appellate Court denied the claim and affirmed his convictions.[11] Id. The defendant then petitioned the District Court for the Central District of Illinois for a writ of habeas corpus, presenting the same ineffective-assistance claim he had raised in state court. Id. After holding an evidentiary hearing, the District Court granted the petition, concluding that defense counsel’s absence did not satisfy “minimum professional standards.” Id. at 1212-13; Siverson v. O’Leary, 582 F.Supp. 506, 510 (C.D. Ill. 1984) (citation omitted), rev’d, 764 F.2d 1208.[12] The State appealed the District Court’s decision to the Seventh Circuit.
Prior to the Seventh Circuit’s resolution of the appeal in Siverson, the United States Supreme Court decided Strickland. Accordingly, the Seventh Circuit began its analysis by assessing defense counsel’s conduct under Strickland’s performance standard. Siverson, 764 F.2d at 1213. The court determined that defense counsel’s “complete absence during the jury deliberations and the return of the verdicts at petitioner’s trial constituted ineffective assistance of counsel in violation of the Sixth Amendment.” Id. at 1213-14. The court summed up its analysis of counsel’s performance by stating that “[b]ecause the Constitution demands that defense counsel at least provide assistance to the defendant during the critical stages of the trial, we must conclude in this case that Siver-son’s counsel ‘made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment.’ ” Id. at 1215 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064).
Moving on to the prejudice analysis, however, the Seventh Circuit declined to resolve the issue under the Strickland for *1194 mulation. Id. at 1216-17. It also refused to presume prejudice under Cronic. Id. It held instead
that the proper standard for determining the prejudice resulting from the erroneous absence of Siverson’s counsel during jury deliberations and the return of the verdict is the same standard that was applied to similar errors prior to Strickland: whether the error was harmless beyond a reasonable doubt under Chapman.
Id. at 1217.[13] In conclusion, I think it obvious that the Vines panel misread Siverson as holding that the Strickland performance standard is inapplicable in judging attorney conduct “in the absence of counsel context.” Vines, 28 F.3d at 1127. Indeed, the Siverson court without a doubt applied Strickland’s, performance standard in assessing the professional reasonableness of counsel’s behavior in leaving his client to fend for himself. Siverson, 764 F.2d at 1215. That said, I move to a discussion of Vines.
C.
In Vines, two defendants stood trial on the counts of conspiring to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. Vines, 28 F.3d at 1125. At some point after the trial was underway, • Vines’s lawyer informed the trial judge that he needed to leave the courtroom for the afternoon. Id.
After discussing the matter with the attorneys, the trial judge informed the jury that defense counsel had been excused for the afternoon, that the defendant had waived defense counsel’s presence, and that the witness who would be testifying in defense counsel’s absence would not be providing testimony relating to the defendant. Id. at 1125-26; id. at 1132-33 (Birch, J., dissenting). Two prosecution witnesses testified during defense counsel’s absence. Id. at 1126 (majority opinion).
The jury acquitted the defendant of the conspiracy charge, but found him guilty of possession with intent to distribute. Id. He appealed his conviction, including in his grounds for reversal the claim that his attorney’s absence while the two witnesses testified constituted ineffective assistance of counsel. Id. We affirmed his conviction without considering the ineffective-assistance claim on direct review, deferring consideration of that claim for collateral review. Id. (citing United States v. Casas, 897 F.2d 535 (11th Cir. 1990) (mem.)). The defendant then asserted this claim in a motion filed under 28 U.S.C. § 2255. Id.
The motion was referred to a magistrate judge. Id. The judge declined to hold an evidentiary hearing and recommended that motion be denied on the ground that the defendant had waived his right to counsel, that no presumption of prejudice was warranted, and that counsel’s absence had not prejudiced his defense. Id. The District Court denied the motion for the reasons stated by the magistrate judge, and the defendant appealed. Id. On appeal, this Court held, based on Siverson, that Strickland was inapplicable because defense counsel was not present when the testimony of the two witnesses was elicited. Id. at 1127.
Though Strickland required defense counsel “to bring to bear such skill and knowledge as will render the trial a reliable adversary testing process,” Strickland, 466 U.S. at 688, 104 S.Ct. at 2065, the Vines panel held that Strickland did *1195 not apply, full stop. Vines, 28 F.3d at 1127. Therefore, counsel’s performance — as opposed to counsel’s absence — could not, as a matter of law, have provided the District Court a constitutional basis for granting the writ and setting aside the defendant’s conviction. This was so even though, as a matter of fact, counsel caused the testimony to be taken in his absence.[14]
“Having concluded that Vines’s temporary absence of counsel claim cannot be analyzed under Strickland,” the court proceeded to resolve the appropriate analytical framework for reviewing Vines’s claim that his Sixth Amendment right to counsel was violated because his counsel was absent during the taking of testimony. Id. at 1128. The court assumed, without deciding, that the defendant had established constitutional error by showing that his trial counsel was absent during the taking of testimony. Id.
After concluding that defense counsel’s absence did not constitute structural error for purposes of Cronic, id. at 1129, the court treated the violation as if it were a trial error subject to harmless-error analysis review under Brecht,[15] because it determined that the presumed violation “may ... be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless.”[16] Id. at 1129-30 (quotation marks omitted) (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991)).[17] With *1196 that statement, the court proceeded to assess the harm defense counsel may have caused when, in violation of his Strickland obligation, he was absent for a period of time during trial. The court found no harm. Id. at 1130-31.
In sum, all the Vines panel did to justify its conclusion that Strickland does not apply “in the absence of counsel context,” id. at 1127, was cite the Siverson passage described above Id. at 1127 & n.7. As a result, Vines could hardly be said to have provided a solid foundation for the New Rule.
D.
The Vines panel, however, did not have the benefit of recent Supreme Court decisions that provide the appropriate framework for assessing defense counsel’s temporary absence at trial. But we do. Consequently, I am unable to see how the majority’s holding squares with Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008), and Woods v. Donald, 575 U.S. -, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015).[18] Both cases involved the absence of defense counsel during an important part of the criminal prosecution, at the plea hearing in Van Patten and during trial in Woods. And in both cases, the Supreme Court held that the relevant state court did not render a decision that was “contrary to, or involved an unreasonable application, of’ Supreme Court precedent in assessing defense counsel’s conduct under Strickland. 28 U.S.C. § 2254(d)(1).
In Van Patten, the defendant pled no contest to first-degree reckless homicide. 552 U.S. at 121, 128 S.Ct. at 744. The defendant’s attorney was not physically present during the plea hearing, but participated by speakerphone. Id. After he was sentenced, the defendant moved the trial court to withdraw his no-contest plea and vacate his conviction. See State v. Van Patten, No. 96-3036-CR, 211 Wis.2d 891, 568 N.W.2d 653, 1997 WL 277952, at *1 (Wis. Ct. App. May 28, 1997). He alleged that his “Sixth Amendment right to counsel was violated when his attorney discussed the plea offer with him by telephone and appeared at the hearing by telephone, resulting in his incomplete understanding of the charges against him and the constitutional rights he was waiving with his plea.” Id. The court denied his motion. The defendant appealed, and the Wisconsin Court of Appeals affirmed. Assessing the defendant’s Sixth Amendment claim under Strickland, the Wisconsin Court of Appeals concluded that “[t]he record does not support, nor does Van Patten’s appellate brief include, any argument that counsel’s performance was deficient or prejudicial.” Id. at *3.[19] The defendant then sought discretionary review in the Wisconsin Supreme Court, which was denied. State v. Van Patten, 215 Wis.2d 425, 576 N.W.2d 280 (1997).
The defendant thereafter petitioned the District Court for the Eastern District of Wisconsin for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The District Court, adopting the recommendation of a magistrate judge, denied the writ. The defendant appealed. The Seventh Circuit concluded that the District Court got it wrong. Van Patten v. Deppisch (Van Patten I), 434 F.3d 1038, 1042 (7th Cir. 2006). The court granted the writ, reasoning that the District Court should have held that the Wisconsin Court of Appeals misapplied *1197 Supreme Court precedent by assessing the defendant’s Sixth Amendment claim under Strickland instead of under Cronic. Put another way, the Seventh Circuit decided that the “state appellate court arrived at a decision contrary to the Supreme Court’s precedent when it analyzed the case under Strickland” rather than Cronic, reasoning that “[w]hen a defendant is denied assistance of counsel at a stage where he must assert or lose certain rights or defenses, the error ‘pervade[s] the entire proceeding.’ ” Id. at 1043 (second alteration in original) (quoting Satterwhite v. Texas, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988)).
The Supreme Court reversed,[20] concluding that its precedent had never clearly established that Cronic should replace Strickland in such a factual context. Van Patten, 552 U.S. at 125-26, 128 S.Ct. at 746-47. The Court described Cronic’s, role vis-a-vis Strickland’s role in assessing ineffective-assistance claims at the plea-hearing stage, proclaiming that “Strickland [ ] ordinarily applies.” Id. at 124, 128 S.Ct. at 745-46. The Court declared that Cronic applies when “circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified,” noting as an example the complete denial of counsel. Id. at 124-25, 128 S.Ct. at 746 (alteration in original) (quotation marks omitted) (quoting Cronic, 466 U.S. at 658, 104 S.Ct. at 2046).
After stating that its cases provided “no categorical answer to th[e] question” whether a court should apply Cronic’s presumption of prejudice when defense counsel participates in a plea hearing by speakerphone, the Court analyzed the Wisconsin Court of Appeals’ decision in Van Patten I.
Id. at 125, 128 S.Ct. at 746. The Wisconsin Court of Appeals held counsel’s performance by speakerphone to be constitutionally effective; neither the magistrate judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that “[u]nder Strickland, it seems clear Van Patten would have no viable claim.” Id. at 125, 128 S.Ct. at 746-47 (quoting Van Patten I, 434 F.3d at 1042). As for the decision of the Wisconsin Court of Appeals, the Supreme Court held that “it cannot be said that the state court ‘unreasonably] appli[ed] clearly established Federal law.’ ” Id. at 126, 128 S.Ct. at 747 (alterations in original) (quoting Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006)).
The facts in Woods are closer to those in the present case than are the facts in Van Patten. In Woods, five defendants were each charged with one count of first-degree felony murder and two counts of armed robbery. 575 U.S. at -, 135 S.Ct. at 1375. While two of these defendants pled guilty to second-degree murder, three defendants stood trial. Id. Pertinent to the alleged ineffective-assistance claim on ha-beas review, the petitioner’s defense counsel was not present in the courtroom when the prosecution introduced testimony and evidence concerning phone records showing calls between cell phones belonging to the defendants. Id. Having heard previously from defense counsel that he did not object to the introduction of the phone records — with defense counsel announcing that “I don’t have a dog in this race. It doesn’t affect me at all.” — the trial court allowed the testimony and evidence to be taken in the attorney’s absence. Id. Defense counsel returned to the courtroom *1198 approximately ten minutes later, at which point he advised the judge that he had no objection to the testimony having been taken in his absence. Id.
The jury convicted the petitioner, and following sentencing,[21] he first appealed his convictions to the Michigan Court of Appeals, arguing that his attorney’s absence during a critical stage of his trial denied him his Sixth Amendment right to effective assistance of counsel, under Cronic, with prejudice to be presumed. People v. Donald, No. 275688, 2008 WL 1061551, at *1-2 (Mich. Ct. App. Apr. 10, 2008). The Court of Appeals disagreed, and applying Strickland, held that “there [i]s no reasonable probability that the outcome of the trial would have been different had counsel been present during the initial portion of the testimony,” and thus the defendant was not. deprived of his right to effective assistance of counsel. Id. at *2.
After the Michigan Court of Appeals affirmed his convictions and the Supreme Court of Michigan denied review of his application for leave to appeal that judgment, the defendant sought federal habeas relief under 28 U.S.C. § 2254, contending that the Michigan Court of Appeals misapplied Cronic. See Donald v. Rapelje, No. 09-CV-11751, 2012 WL 6047130 (E.D. Mich. Dec. 5, 2012); People v. Donald, No. 275688, 2008 WL 1061551, at *4 (Mich. Ct. App. Apr. 10, 2008); People v. Donald, 482 Mich. 1006, 756 N.W.2d 87 (2008). The District Court agreed, holding that the “[t]he Michigan Court of Appeals’ decision was contrary to existing Supreme Court precedent with respect to Cronic.” Id. at *14. The court also held that the Michigan Court of Appeals erred in its “unreasonable application of the facts as to Strickland.” Id.
The Sixth Circuit affirmed. See Donald v. Rapelje, 580 Fed.Appx. 277 (6th Cir. 2014). It held that at the time the Michigan Court of Appeals decided the petitioner’s Sixth Amendment claim, Supreme Court holdings clearly established that “the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice.” Id. at 283-84 (quotation marks and citations omitted). Moreover, the Sixth Circuit observed: “The absence or denial of counsel need not be caused by the government to trigger a presumption of prejudice under Cronic. A presumption of prejudice applies even where ‘the constraints on counsel ... are entirely self-imposed.’ ” Id. at 283 (quoting Cronic, 466 U.S. at 662 n.31, 104 S.Ct. at 2048 n.31). “[B]y applying Strickland, rather than Cronic, the Michigan Court of Appeals ‘applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases.’ ” Id. at 285 (second and third alterations in original) (quoting Penny v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001)).
On certiorari review, the Supreme Court stated that the issue was whether the Michigan Court of Appeals’ decision to assess defense counsel’s absence, under Strickland instead of Cronic, was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by” the Court’s holdings. Woods, 575 U.S. at -, 135 S.Ct. at 1376 (quotation marks omitted) (quoting 28 U.S.C. § 2254(d)(1)). The Court addressed the issue by observing, first, that “[i]n the normal course, defendants claiming ineffective assistance of counsel must satisfy the familiar framework of Strickland v. Washington, ... which requires a showing that ‘counsel’s performance was deficient’ *1199 and ‘that the deficient performance prejudiced the defense.’ ” Id. at -, 135 S.Ct. at 1375 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). Under Cronic, however, “courts may presume that a defendant has suffered unconstitutional prejudice if he ‘is denied counsel at a critical stage of his trial.’ ” Id. at -, 135 S.Ct. at 1375-76 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. at 2047). A critical stage is one that “held significant consequences for the accused.” Id. at -, 135 S.Ct. at 1376. “According to the Sixth Circuit, these statements should have compelled the Michigan court to hold that the phone call testimony was a ‘critical stage’ and that counsel’s absence constituted per se ineffective assistance.” Id. The Court disagreed. Cronic’s presumed-prejudice standard was inapplicable for three reasons. First, “[wjithin the contours of Cronic, a fairminded jurist could conclude that a presumption of prejudice is not warranted by counsel’s short absence during testimony about other defendants where that testimony was irrelevant to the defendant’s theory of the case.” Id. 135 S.Ct. at 1377-78. Second, “Cronic applies in ‘circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified,’ ” id. at -, 135 S.Ct. at 1378 (quoting Cronic, 466 U.S. at 658, 104 S.Ct. at 2046), and this was not such a case. Third, the Michigan Court of Appeals’ decision was not “an unreasonable application of [the Supreme Court’s] cases,” including Strickland. Id. at -, 135 S.Ct. at 1377.
In Van Patten and Woods, like the case at hand, counsel’s absence was entirely self-imposed. At issue before the Supreme Court in Van Patten and Woods was not whether Strickland’s performance standard applied in determining whether counsel’s absence was deficient, for the parties and the courts below agreed that it did apply. Rather, the issue was whether Strickland or Cronic provided the prejudice standard. The Court held that the state appellate courts’ applications of the Strickland prejudice standard did not involve an “unreasonable application! ] of clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
Although the Supreme Court was reviewing the state appellate courts’ decisions with § 2254 deference, based on its decisions in Van Patten and Woods, I cannot imagine the Court holding Strickland wholly inapplicable in the context here. If Roy believed he had a meritorious denial-of-eounsel argument, he should have proceeded as the defendants in Van Patten and Woods did by asserting that he was denied effective assistance of counsel because defense counsel breached his Strickland obligation.
II.
The New Rule fundamentally alters the traditional scheme for assessing a violation of an accused’s Sixth Amendment right to the assistance of counsel. This Court today finds no one in particular at fault for violating Roy’s Sixth Amendment right. As will be discussed, the upshot of this remarkable fact is that we can no longer apply elementary doctrines like plain-error review and invited error sensibly to this claim. Furthermore, the actor best positioned to avoid New Rule violations will be the trial judge, and thus, the New Rule materially alters his- obligations at trial in future cases.
“[T]he right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been con-stitutionalized in the Sixth and Fourteenth Amendments.” Herring v. New York, 422 U.S. 853, 857, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). “The right to the assis- *1200 tanee of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.” Id. at 858, 95 S.Ct. at 2553. Under Hewing and before today, Roy could obtain relief from his convictions only if he established that the 'trial judge or defense counsel denied his attorney that opportunity to participate fully and fairly.[22]
But Roy is not required to establish that anyone denied his attorney the opportunity to participate fully and fairly in the fact-finding process in order to make out a Sixth Amendment violation. All he had to show was that inculpatory testimony was taken in defense counsel’s absence — fault is irrelevant. The New Rule is thus a no-fault rule. But that is so for the purposes of this case only. In all future cases, the New Rule will be a fault rule. And the fault will lie with the trial judge.
In future cases, the New Rule, in operation, will hold the trial judge answerable for the self-imposed restriction defense counsel’s absence places on his client’s right to the assistance of counsel. In doing that, the New Rule will distort the scheme the Supreme Court has established for protecting the right to the assistance of counsel and, I submit, will be beyond our ken to administer.
Prior to today under the circumstances presented here, a trial judge could not be held responsible for infringing a defendant’s right to the assistance of counsel unless the judge actually denied defense counsel “the opportunity to participate fully and fairly” in the trial process.[23] Id. Suppose that when the trial resumed in this case and the prosecutor began examining Deputy Longson, the judge was aware that Roy’s lawyer was not present and that his absence might constitute ineffective assistance. Would the judge have a Sixth Amendment obligation to stop the examination and have the lawyer summoned to the courtroom so he could protect his client’s interests? Would allowing the examination to proceed deny Roy’s attorney “the opportunity to participate fully and fairly in the trial process”? Stated another way, would it deny Roy his right to the effective assistance of counsel? Justice Kennedy suggested the answer to these questions is no in his concurring opinion in Mickens v. Taylor.
The Sixth Amendment protects the defendant against an ineffective attorney.... It would be a major departure to say that the trial judge must step in every time defense counsel appears to be providing ineffective assistance, and indeed, there is no precedent to support this proposition. As the Sixth Amendment guarantees the defendant the assistance of counsel, the infringement of that right must depend on a deficiency of the lawyer, not of the trial judge.
535 U.S. 162, 179, 122 S.Ct. 1237, 1247, 152 L.Ed.2d 291 (2002) (Kennedy, J., concurring) (citing Strickland, 466 U.S.at 685-86, 104 S.Ct. at 2063).[24]
*1201 The New Rule will be “a major departure” in trials that begin once our decision today is announced. The trial judge will be on notice that if inculpatory testimony is presented while defense counsel is absent, a constitutional error will have occurred. The judge will have constructively caused the error by failing to prevent it. He could have ensured counsel’s appearance, but failed. On appeal, the defendant will seize on this failure to argue that his conviction should be reversed. Whether or not the defendant prevails will depend on the standard of review this Court uses to assess the harm he suffered because inculpatory testimony was received in his lawyer’s absence.
Traditionally, the standard for review for trial-court error on direct appeal depends on whether the defendant called the error to the trial judge’s attention in a timely objection so that the error might be avoided. If the defendant objects, the district court overrules the objection, and we conclude that the court has erred, we consider whether the error was harmless under Rule 52(a) of the Federal Rules of Criminal Procedure[25] or Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for a constitutional error. If the defendant fails to object and we conclude that the court erred, we would consider whether the error constituted plain error under Rule 52(b).[26] In these “absence of counsel” cases, I assume that counsel would not have objected to an error that occurred during his absence and conclude, as explained below, that that Rule 52(b) would be inapplicable and that Chapman would provide the standard of review.
The constitutional error the New Rule creates will occur in one of two scenarios. The first involves defense counsel’s absence without the court’s permission, as in this case. The second involves defense counsel’s absence with the court’s permission, as in Vines.
In the first scenario, defense counsel fails to call the New Rule violation to the trial judge’s attention after returning to the courtroom and discovering what transpired during his absence. The defendant is convicted and on appeal he cites the New Rule violation in arguing that his conviction should be reversed. Although the error had not been preserved for appellate review, we do not review the error under the plain-error doctrine. The error had already occurred, and the trial judge was powerless to undo it. Hence, an objection would have served no useful purpose; it would have been an exercise in futility. Our review of the harm caused by the *1202 inculpatory testimony is conducted under the Chapman standard, not the plain-error doctrine.[27]
In the second scenario, instead of bringing the potential error to the trial judge’s attention through an objection, defense counsel seeks permission for an anticipated absence. The defendant is convicted and on appeal he cites the New Rule in arguing that his conviction should be reversed. The Government, in response, argues that the invited-error doctrine forecloses the defendant’s argument.[28] This response presents the following conundrum.
If the invited-error doctrine is held inapplicable, the defendant will have his cake and eat it too. He will receive the benefit of the bargain he authorized his lawyer to strike with the court;[29] at the same time, he will give the opportunity to challenge as Sixth Amendment error the taking of in-culpatory testimony during defense counsel’s absence. Allowing the defendant to have his cake and eat it too would run counter to both common sense and the weight of precedent. For this reason, we would be inclined to hold the doctrine applicable.
If we held the doctrine applicable, though, a constitutional violation occurred with impunity. Since Strickland is inapplicable in the absent-attorney context under the New Rule’s reasoning, the defendant could not claim in a motion filed under 28 U.S.C. § 2255 that his attorney’s ineffective assistance, in failing to anticipate the harm that could result from the introduction of inculpatory testimony in his absence, caused the violation.
In sum, if we held the invited-error doctrine inapplicable, we would subject the court to ridicule. If we held it applicable, we would have allowed a constitutional violation to occur without redress. The conundrum I have described is the result of our alteration — presumably, for the absence-of-eounsel context alone — of the scheme the Supreme Court has established to en *1203 sure the Sixth Amendment’s guarantee of the assistance of counsel. The majority attempts to minimize the mischief that alteration will cause by hinting that the New Rule will not apply if the defendant waives counsel’s absence. See ante at 1141-42. As I explain below in positing the effect the New Rule will have on the trial of criminal cases — especially multi-defendant cases— this caveat will turn out to be inoperative.
III.
The immediate reaction of the District Judges of the Eleventh Circuit will be to reconsider the ways in which they monitor the presence of defense counsel throughout every stage of a criminal prosecution. After reading what happened in this case, they will take whatever steps are necessary to ensure that, during every aspect of trial, defense counsel will be present at all times. Despite close monitoring, however, there will be times when the court becomes unaware of an attorney’s absence— especially in a multi-defendant case.[30] Al- . though the absence may be of short duration, it will result in a constitutional violation if, during the absence, inculpatory testimony were taken.
There will also be times when counsel seeks leave of court to attend to matters elsewhere, as was the case in Vines and in Woods. After receiving the prosecutor’s assurances that no testimony, or other evidence, would be presented during counsel’s absence that would potentially incriminate his client and having obtained the defendant’s permission for defense counsel’s absence, the trial judge granted defense counsel’s request.
In creating the New Rule, the Court hinted that the New Rule would not be violated if the defendant were to waive defense counsel’s absence. Ante at 1141T42. By waiving the presence of defense counsel, the defendant would thereby relinquish the right to raise a New Rule violation on appeal.
That a defendant may waive the right to the presence of counsel for some period while he is standing trial raises a question the Court’s opinion doesn’t seem to answer: Can the trial judge find a waiver based on counsel’s representation that his client agreed to counsel’s absence or does the trial judge have to address the defendant directly and explain what will likely take place in counsel’s absence, pointing out the disadvantages of not having counsel at his side?
The Fifth Circuit, drawing on the Supreme Court’s seminal decision in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and the Circuit’s decision in Ford v. Wainwright, 526 F.2d 919 (5th Cir. 1976),[31] answered that question in United States v. Russell, 205 F.3d 768 (5th Cir. 2000). As Russell explained, the trial judge must determine whether the defendant is willing to waive the right to counsel:
The right to counsel must be waived affirmatively and such waiver must be understandingly, intelligently, and voluntarily done. A waiver cannot be established through presumed acquiescence.
*1204 Furthermore, it is the “responsibility, obligation and duty of the Trial Judge” to make this “serious determination of waiver,” and “such determination should appear plainly on the record.” The trial court should assist in protecting the defendant’s rights, at a minimum, by insuring that the defendant is aware of and understands the right to have counsel present, by explaining the meaning and consequence of waiving the right to counsel ... and making sure that such waiver ... is on the record.
Id. at 771 (citations omitted) (quoting Ford, 526 F.2d at 922).
Assuming that the trial judge adheres to this standard in deciding whether or not the defendant has waived his right to the assistance of counsel during his attorney’s absence, I consider the likelihood that the court would find a waiver in either of two scenarios. One is depicted in this case, Roy, in which defense counsel absented himself without the court’s permission. The other scenario is depicted in Vines and Woods, in which defense counsel left the trial with the court’s permission and the defendant’s consent.
A waiver in the Roy scenario has to be found, if at all, after the fact, following counsel’s absence. To find a waiver, the court must find that prior to counsel’s absence, the defendant, having been fully informed of the untoward consequences he might suffer as the trial proceeds in counsel’s absence, intelligently and voluntarily waived his right to counsel during that absence.
Four “parties” have an interest at stake: the trial judge, the prosecutor, the defendant, and defense counsel. The trial judge wants to obtain a waiver, for if upheld on appeal, the waiver would nullify the constitutional error as a ground for reversing the defendant’s conviction, thereby avoiding a new trial. The prosecutor wants a waiver for the same reason.[32] The defendant, if informed that a constitutional error has been committed that would inure to his benefit on appeal in the event he is convicted, is likely to invoke the attorney-client privilege and decline to answer the judge’s questions, which ask him to reveal what, if anything, his attorney told him before absenting himself. Defense counsel, although not answerable under Strickland for the harm his absence caused his client, is answerable under Strickland for informing his client about the constitutional error that had occurred during the absence and that a waiver would not be in his client’s best interest. In short, in the Roy scenario, the trial judge and the prosecutor want a waiver; the defendant and his attorney do not.
To avoid having to establish in the defendant’s appeal of his conviction that the constitutional error was harmless beyond a reasonable doubt, the prosecutor asks the trial judge to determine whether the defendant waived his right to counsel prior to his attorney’s absence.[33] Assuming the judge may be willing to undertake the task he would likely decide to question the defendant in open court rather than, without the prosecutor, in camera. To enable the judge to proceed, the defendant has to waive the attorney-client privilege. That cannot occur until the defendant has had an opportunity to confer with his lawyer. The lawyer’s advice is key. The lawyer recommends that the defendant not waive *1205 the attorney-client privilege. A waiver of the attorney-client privilege could lead to the waiver of the right to counsel during counsel’s absence, and that waiver would, in the event of a conviction, eliminate any absence-related constitutional error as a ground for reversing the conviction on appeal.[34] The lawyer recommends against waiving the attorney-client privilege for another reason: the defendant’s answers to the court’s questioning might work against counsel’s defense strategy.
In sum, in the Roy scenario, an inquiry into whether the defendant waived his right to the assistance of counsel prior to counsel’s absence is fraught with problems — some obvious, some hidden. I predict that the District Judges of this Circuit will forego the inquiry altogether.
Turning to a waiver in the Vines-Woods scenario, my reading of the tea leaves is that it will be a rare occasion, indeed, when the trial judge grants defense counsel a leave of absence. I cannot imagine granting counsel leave in a trial involving only one defendant. During counsel’s absence, the defendant would simply sit still and remain silent, defenseless. And I can only imagine granting counsel leave in a multi-defendant trial in extraordinary circumstances. Multi-defendant trials invariably involve a charge of conspiracy, which means that practically all of the evidence is admissible against all of the defendants as relevant to prove the crime. The trial judge, when inquiring of a particular defendant as to whether the defendant is willing to waive the right to his attorney’s presence, would have to be clairvoyant to inform the defendant of exactly what would transpire during his attorney’s absence. Testimony inculpating the accused could come in unexpectedly through a co-defendant’s cross-examination of a witness, or it could come in the form of an exhibit introduced into evidence or marked for identification and published to the jury. A waiver of counsel’s presence that would cover the unknown or unanticipated would be, to put it mildly, of dubious validity.
A waiver found under these circumstances would do away with the Sixth Amendment violations that occurred in counsel’s absence. If convicted, the defendant will raise the violations as grounds for reversal in his opening brief on appeal. The Government will assert the waiver in its answer brief, and the defendant in his reply brief will argue that the waiver was invalid. Our job will be to wrestle with the waiver’s validity or, alternatively, to search the record to determine whether the constitutional violations were harmless beyond a reasonable doubt.[35]
Yes, it will be a rare occasion, indeed, when a trial judge grants defense counsel permission to absent himself from the trial proceeding. Thus, the Court’s caveat hinting that the possibility of defendants’ waiving the presence of counsel may mollify the effects of the New Rule rings hollow.
*1206 IV.
The New Rule modifies Strickland’s application in the Eleventh Circuit. After today, a defendant will be unable to claim that his attorney’s absence from the courtroom during trial fell below the standard for effective assistance of counsel set forth in Strickland.
The New Rule relieves defense counsel of his Sixth Amendment obligation under Strickland when absenting himself from trial. The result is that, during counsel’s absence, the client is left standing trial alone without the right to defend himself, which he would possess if he had chosen to represent himself. Although he placed his client in that situation, defense counsel is not accountable under Strickland for any prejudice his client suffered during his absence. Instead, the responsibility for the prejudice lies with the trial judge.
The responsibility lies with the trial judge because the New Rule transfers to the trial judge defense counsel’s obligation under Strickland not to absent himself from the trial proceeding and leave his client defenseless. The trial judge is held responsible, as if he had committed a constitutional error, for any prejudice the defendant suffers during counsel’s absence. If the defendant is convicted and appeals, the trial judge will be held accountable for the prejudice, if any, in the form of a reversal, unless the Government can convince this Court that the prejudice was harmless beyond a reasonable doubt.
In conclusion, today’s decision rearranges the Supreme Court’s scheme for protecting the right to the assistance of counsel in the absence-of-counsel context, and that context alone. The framework Strickland fashioned is modified, supplanted by a new constitutional rule that imposes accountability on the trial judge without fault. As applied going forward, the New Rule becomes fault based and effectively instructs trial judges that if a defendant’s lawyer is absent at any time during the prosecution, they will have committed constitutional error.[36]
Eighty years ago, Justice Brandéis, concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring), observed that the Supreme Court “will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.” Id. at 347, 56 S.Ct. at 483 (quotation marks and citation omitted). In this case, the New Rule is unnecessary to affirm Roy’s convictions. I would decline Roy’s invitation, which the Government joins, to modify Strickland’s application and create a new Sixth Amendment rule, because any error that may have occurred was harmless beyond a reasonable doubt. In affirming his convictions, I would explicitly state that Roy is free to pursue a Strickland ineffective-assistance claim in the District Court in a motion filed under 28 U.S.C. § 2255.

. The relevant portion of the Sixth Amendment, the Counsel Clause, provides, "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense.” U.S. Const. amend. VI.

. I omit the prosecutor in resolving the causation issue because the direct examination of Deputy Longson could not have resumed without the trial judge’s approval.

. Roy could have argued that counsel's failure to appear in court on time constituted ineffective assistance under Strickland's performance standard and that but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Although we rarely entertain ineffective-assistance claims on direct appeal— because the reason for counsel’s allegedly deficient performance has not been established factually — we could have entertained Roy’s ineffective-assistance argument by assuming that counsel’s failure to appear on time constituted deficient performance under Strickland and then determining from the trial transcript whether such failure prejudiced Roy’s defense. The Court has already made that determination, finding that what transpired in counsel’s absence was harmless beyond a reasonable doubt.
It should be noted that, in theory, Roy could claim that his attorney's performance *1190 following his return to the courtroom was deficient under Strickland and that such deficiency was outcome determinative. Roy has not presented that claim, but he could do so by moving the District Court for relief under 28 U.S.C. § 2255. The filing of the motion would operate as a waiver of Roy’s attorney-client privilege. Thus, Roy and his attorney would be subject to examination under oath about counsel's litigation strategy and how, according to Roy, counsel's conduct fell short of Strickland's performance standard.

. Both Roy and the Government agree that Strickland does not govern, but that, nonetheless, there was a Sixth Amendment violation. The parties' agreement, however, does not cabin our authority to apply the correct legal standard. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.” Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152 (1991).

. At this point, I pause to “note the various standards of review Roy’s claim could be assessed under the majority's approach, my approach, and the dissent's approach. Under the majority's new rule, Chapman's harmless-error standard applies: the Government bears the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Under the dissent’s view, Cronic should govern this claim, prejudice is presumed, and reversal would be automatic. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Under my view, Strickland should govern this claim, and therefore the defendant would bear the burden of establishing both deficient perform-áíice and resulting prejudice to such an extent that there is reasonable probability of a different result absent counsel's errors. Strickland, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068.

.The Court adds a caveat to the New Rule in language preceding what I have quoted. The caveat is that the New Rule is violated "absent evidence of an attempt to deliberately inject error into the record and without a waiver from the defendant.” Ante at 1141. As I point out in part III, this language will have no practical effect on the operation of the New Rule. The defendant’s right to assistance of counsel will be infringed whenever the prosecution elicits inculpatory testimony in defense counsel's absence.

. I say it is nonsensical, because even if the defendant argued that his counsel violated Strickland, under the New Rule, Strickland’s prejudice analysis is completely displaced by Chapman’s harmless-error analysis.

. The claim in Siverson was brought under 28 U.S.C. § 2254, and the claim in Vines was brought under 28 U.S.C. § 2255. Vines, 28 F.3d at 1125; see Siverson, 764 F.2d at 1210, 1212.

. The Vines panel used yet another standard for assessing potential prejudice, that announced by the Supreme Court in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), several years after Siverson and Strickland were decided. Under Brecht, a habeas petitioner on collateral review bears the burden of demonstrating that a constitutional error at trial "had substantial and injurious effect or influence in determining the jury’s verdict.” 507 U.S. at 637, 113 S.Ct. at 1722 (quotation marks omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

. The defendant did not, however, assign as error the trial judge’s approval of counsel’s absence.

. The Illinois Appellate Court denied the ineffective-assistance claim:
[C]ounsel’s presence in the later stages of the trial would not have altered the outcome. And assuming the validity of the defendant’s other claims of incompetence on the part of his attorney, we do not find that they, even taken together, would have affected the outcome of the trial.
Siverson v. O'Leary, 582 F.Supp. 506, 510 (C.D. Ill. 1984) (alteration in original) (quotation marks omitted) (quoting People v. Siverson, No. 15975, slip op. at A-3 (Ill. App. Ct. July 23, 1980)), rev’d, 764 F.2d 1208.

.The District Court’s decision came 90 days before the Supreme Court decided Strickland and Cronic. Applying the governing pre-Strickland case law, the District Court found that defense counsel’s absence deprived the defendant of effective assistance of counsel at a “vital stage of the proceedings” and could not “conclude that the presence of defense counsel would not have affected the outcome of the case.” Id. at 511.

. Siverson was decided shortly after Strickland was handed down by the Supreme Court. It seems that the absence of counsel and the possibility of a constitutional violation influenced the Seventh Circuit's determination that Chapman was the appropriate standard for its prejudice analysis, rather than Strickland. Regardless, we now, of course, use Strickland's own standard for evaluating prejudice to resolve ineffective-assistance claims.

. In theory, the defendant could have claimed that the trial judge, in approving defense counsel’s request and continuing the trial in his absence, interfered with his right to the assistance of counsel in violation of the court’s , obligation under the Sixth Amendment. Such a claim would have been cognizable on direct appeal because the record evidencing the claim was complete, so an evidentiary hearing would not be needed. But the defendant did not raise the issue on direct appeal. The claim was therefore procedurally defaulted and, as such, would not have been cognizable in the § 2255 proceeding he brought absent a showing of cause for the default and resulting prejudice. See Martinez v. Ryan, 566 U.S. 1, 9, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012).

. As mentioned above, on collateral attack a habeas petitioner bears the burden of demonstrating that a constitutional error "had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht, 507 U.S. at 637, 113 S.Ct. at 1722 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. at 1253).

. Instead of searching the record for harmless error as the Court does here — that is, without assuming hypothetically what counsel would have done had he been present — the Vines panel effectively assumed that defense counsel was present while witnesses were testifying and failed to perform as a reasonably competent lawyer would have performed under the Strickland standard. Vines, 28 F.3d at 1130-31. Having assumed as much, the Vines panel then determined that defense counsel’s deficient performance caused the defendant no prejudice.

.The panel rejected the defendant’s argument that prejudice should be determined under the “irrebuttable presumption” set forth in Cronic as follows:
In order to apply Cronic ..., we must conclude that Vines’s claim falls under one of the three circumstances Cronic enumerates as an exception to the Strickland standard. Vines was not completely denied counsel. Rather, Vines's counsel was temporarily absent^ during a portion of the actual trial. Vines does not contend that his trial counsel failed to subject the prosecution’s case to meaningful adversarial testing. Thus, in order for Vines to be entitled to a presumption of prejudice, we must conclude that Vines was denied counsel at a critical stage of trial within the meaning of Cronic.... Where, as in this case, no evidence directly inculpating a defendant is presented while that defendant’s counsel is absent, we decline to hold that counsel was absent during a critical stage of trial within the meaning of Cronic. Accordingly, we conclude that Vines's counsel was not absent during a critical stage of trial and Vines is therefore not entitled to a presumption of prejudice under Cronic.
Vines, 28 F.3d at 1128 (footnote omitted).

. Both Van Patten and Woods were brought and disposed of under 28 U.S.C. § 2254.

. The Wisconsin Court of Appeals opinion contains no reference to Cronic or presumed prejudice. I assume that the defendant cited Cronic for the first time in his initial § 2254 petition.

. The Supreme Court had previously vacated the Seventh Circuit’s opinion to reconsider in light of a recent case. See Schmidt v. Van Patten, 549 U.S. 1163, 127 S.Ct. 1120, 166 L.Ed.2d 888 (2007). On remand, the Seventh Circuit reinstated its earlier opinion. Van Patten v. Endicott (Van Patten II), 489 F.3d 827, 828 (7th Cir. 2007).

. The petitioner was sentenced to life imprisonment on the felony-murder conviction and to concurrent prison terms of 10.5 to 20 years on the armed-robbery convictions. Woods, 575 U.S. -, 135 S.Ct. at 1375.

. I omit from my discussion the actions of other government actors such as the prosecutor because, even if the prosecutor had initiated questioning the witness on his own without defense counsel present, the prosecutor could not have done so without the trial judge’s approval.

. Note that in Van Patten and Woods, the claims were not that the denial of the assistance of counsel occurred at the hands of the trial judge. Rather, as the Sixth Circuit put it in Woods, "the constraints on counsel ... [wejre entirely self-imposed” by defense counsel. Donald v. Rapelje, 580 Fed.Appx. 277, 283 (6th Cir. 2014) (quoting Cronic, 466 U.S. at 662 n.31, 104 S.Ct. at 2048 n.31.

.The Court holds that "inculpatory testimony ... taken from a government witness” gives rise to a Sixth Amendment violation. I suggest that under the Court's opinion any evidence incriminating the defendant that is made part of the record during his attorney’s *1201 absence would create a Sixth Amendment violation.

. See Fed. R. Crim. P. 52(a) ("Harmless Error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.”).

. See Fed. R. Crim. P. 52(b) ("Plain Error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.”); Molina-Martinez v. United States, 578 U.S. -, -, 136 S.Ct. 1338, 1343, 194 L.Ed.2d 444 (2016) ("First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain — that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different. Once these three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' ” (alteration in original) (citations omitted) (first quoting United States v. Dominguez Benitez, 542 U.S. 74, 76, 124 S.Ct. 2333, 2336, 159 L.Ed.2d 157 (2004) and then quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993))).

. I note that the Government has not taken the position on appeal that the invited-error doctrine should foreclose Roy's claim. That is, in absenting himself, Roy’s attorney invited the constitutional error he now asserts, the Government acknowledges, and the Court recognizes. In my view, the Court's opinion would not foreclose the Government from invoking the doctrine in a case presenting the first scenario.

. As we have explained before,
"The doctrine of invited error is implicated when a party induces or invites the district court into making an error.” Alabama Great Southern R. Co. v. Johnson, 140 F.2d 968, 970-71 (5th Cir. 1944). For example, a defendant can invite error by introducing otherwise inadmissible evidence at trial or by submitting an incorrect jury instruction to the district judge that is then given to the juiy. Generally, an appellate court will not review an error invited by a defendant, on the rationale that the defendant should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal.
United States v. Stone, 139 F.3d 822, 838 (11th Cir. 1998). See also Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981).
The invited-error doctrine can be invoked to foreclose appellate consideration of a constitutional error. See, e.g., United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir. 2005).

.We must assume that the bargain benefited — or was at least neutral to — the defendant because he consented to it after having been fully informed of the consequences that could result from his lawyer’s absence. Among other things, in determining whether the defendant consented to the bargain, the court would have explained that if inculpatory testimony were taken in counsel's absence, a constitutional violation would have occurred, and that, if convicted, he could appeal his conviction and assert the violation as a ground for reversal.

. I vividly recall trying a 19-defendant drug-trafficking conspiracy when sitting by designation in Brunswick, Georgia, in the early 1980s. Keeping track of the movement of 19 lawyers in the packed courtroom was no small task. I am sure there were moments when a lawyer stepped out of the courtroom for any number of reasons — to go to the restroom, to ask the Marshal whether a witness subpoena had been served, or to make a telephone call.

. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981).

. The prosecutor evidenced this concern in this case, after Roy’s attorney returned to the courtroom. Although the prosecutor could not have anticipated the New Rule, he obviously anticipated a potential Strickland claim based on counsel’s absence.

. In the case at hand, the prosecutor attempted to minimize the prejudicial effects of defense counsel's absence by repeating his questions he had asked Deputy Longson during counsel’s absence and obtaining the answers Longson had given.

. Under the New Rule, Strickland's performance standard would govern counsel's conduct following his absence and therefore the advice he gives his client as to whether he should waive the attorney-client privilege. I suggest that to avoid an ineffective-assistance claim on collateral attack, counsel would advise the defendant not to waive the privilege.

. Based on the procedural posture of claims that will be brought under the New Rule on direct review, the difficulty of assessing a purported waiver’s validity may prove to be beyond our review in the overwhelmingly majority, if not all, such cases. As Judge Birch’s dissenting opinion in Vines suggests instead, harmless-error review under Chapman will be the norm, if not the entire ball game. See Vines, 28 F.3d at 1137-38 (Birch, J., dissenting) ("I conclude that the waiver issue has not been reviewed properly in the district court. Therefore, the record in this case does not enable us to determine if Vines’s waiver of his right to counsel was knowing, intelligent and voluntary. A remand should be required to make this determination.”).

. In promulgating the New Rule, we are acting as if we were exercising our supervisory powers, but doing so unnecessarily. As the Supreme Court observed in United States v. Hasting, "Supervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since by definition, the conviction would have been obtained notwithstanding the asserted error.” 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1982). In this case, since the alleged error is harmless beyond a reasonable doubt, this Court need not make the constitutional rulings it is making.